CITY OF WILLIS, Leonard Reed, in His Official Capacity as [Mayor] of the City of Willis, James Nowak, in His Official Capacity as Chief of Police of the City of Willis, and Hector Forestier, in His Official Capacity as City Manager of the City of Willis, Appellants

v.

Luis GARCIA, et al., Appellees

NO. 09-16-00164-CV

Court of Appeals of Texas, Beaumont.

Submitted on October 27, 2016

Opinion Delivered July 6, 2017

need not consider the effect of collateral estoppel or issue preclusion on Appellant's arguments. *See* Tex. R. App. P. 47.1.

Patricia L. Hayden, Eric C. Farrar, Olson and Olson, LLP, Houston, TX, Larry L. Foerster, Darden, Flower and Creighton, LLP, Conroe, TX, for Appellants.

Russell J. Bowman, Bowman and Stella, Irving, TX, for Appellees.

Before McKeithen, C.J., Horton and Johnson, JJ.

## OPINION

LEANNE JOHNSON, Justice

This is an accelerated appeal of an interlocutory order denying a plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2016); Tex. R. App. P. 28.1(a). Appellants, the City of Willis (the City), Leonard Reed in his official capacity as Mayor of the City, James Nowak in his official capacity as

Chief of Police of the City, and Hector Forestier in his official capacity as City Manager of the City,[1] in one issue contend that the trial court erred in denying their plea to the jurisdiction. Appellants argue that the plaintiffs failed to exhaust administrative remedies and the plaintiffs' claims are barred by governmental immunity.

The underlying lawsuit was originally filed on January 11, 2016, by Luis Garcia, on behalf of himself and "others similarly situated" who have paid a civil penalty for violating the City's Ordinances sections 70.01 through 70.12 (enacted by the passage of Ordinance No. 09-0721A and hereinafter referred to as the "Red Light Camera Ordinance") that authorized and created a photographic traffic signal enforcement system in Willis. Luis Garcia, joined by Shelby D. Glazier, Alisa Davie, and Debra Earle (collectively Plaintiffs or Appellees), later filed a First Amended Original Petition, on behalf of themselves and again as proposed putative class representatives for those who are similarly situated registered automobile owners who have paid a civil penalty for violating the City's Red Light Camera Ordinance. Plaintiffs sought injunctive relief, declaratory relief, a refund of penalties paid or, alternatively, damages for inverse condemnation, certification of a class, appointment of attorneys to act as class counsel, and attorney's fees.[2] Plaintiffs' suit specifically challenges the constitutionality of the City's Red Light Camera Ordinance, Chapter 707 of the Texas Transportation Code, and section 29.003(g) of the Texas Government Code.[3] Additionally, the Plaintiffs allege that the City failed to meet the requirements of the City's Red Light Camera Ordinance and Chapter 707 of the Texas Transportation Code because the City allegedly failed to conduct a traffic engineering study as required before installing the cameras.

The Defendants filed an answer and asserted a general denial. The Defendants challenge jurisdiction arguing the Plaintiffs' claims are barred by governmental immunity, official immunity, failure to exhaust administrative remedies, res judicata and collateral estoppel, and that exclusive jurisdiction rests in the municipal court.[4]

The Defendants filed a joint Plea to the Jurisdiction arguing that the trial court lacked subject matter jurisdiction over the Plaintiffs' claims. The Plaintiffs filed a response. The Plaintiffs argued in their response that they were seeking "declaratory relief and injunctive relief that Chapter 707 and the [City's Red Light Camera] Ordinance, which was enacted under the

---

1. Throughout this Memorandum Opinion, we refer to Reed, Nowak, and Forestier collectively as "the City Officials," and to the City and the City Officials collectively as "Defendants" or "Appellants."

2. The First Amended Petition was filed on February 15, 2016, and it was the live pleading at the time the court ruled on Defendants' plea to the jurisdiction.

3. The Plaintiffs do not specify in their petition or on appeal whether they are asserting a "facial" challenge or an "as applied" challenge.

4. There is a reference in some of the responses filed in the trial court to Plaintiffs' Motion for Partial Summary Judgment filed on February 16, 2016, purportedly addressing whether the City and the City Officials had immunity for the claims asserted by the Plaintiffs, and another Motion for Partial Summary Judgment was filed by the Plaintiffs on February 26, 2016. The February 16, 2016 Motion for Partial Summary Judgment is not part of the appellate record. The City and the City Officials filed a response to both motions. Nevertheless, there is no indication in the appellate record that the trial court has ruled upon such motions. Neither of the Plaintiffs' Motions for Partial Summary Judgment are before us in this appeal.

authority of Chapter 707, and Texas Government Code Section 29.003(g), are unconstitutional, and therefore illegal, void and of no effect." The Plaintiffs also asserted that they filed a "common law claim for reimbursement of the unconstitutional, and hence, unlawful red light camera penalties involved in this lawsuit.... [as well as] a takings claim under Article I, Section 17 of the Texas Constitution for reimbursement of the unlawful and illegal red light camera penalties involved in this lawsuit." The Plaintiffs further alleged that the failure of the City to conduct the required traffic engineering study precludes the City from assessing and collecting the fines. The Plaintiffs contend that their "claims for declaratory judgment and injunctive relief, and reimbursement of the unlawful red light camera penalties involved in this lawsuit, based on Defendants assessing and collecting red light camera penalties in violation of the law, are not claims subject to the exhaustion of remedies defense asserted by Defendants."

The trial court denied Appellants' Plea to the Jurisdiction, and this interlocutory appeal followed.[5] We reverse and render judgment for the Defendants.

## RED LIGHT CAMERA STATUTES

In 2007, the Texas Legislature passed Senate Bill No. 1119, which was codified in Chapter 707 of the Texas Transportation Code, effective September 1, 2007. *See* Act of May 27, 2007, 80th Leg., R.S., Ch. 1149, §§ 1, 10, 2007 Tex. Gen. Laws 3924, 3931 (current version at Tex. Transp. Code Ann. § 707.001-.019 (West 2011 & Supp. 2016)). The Legislature also amended section 29.003 of the Texas Government Code, adding subsection (g). *See* Act of May 27, 2007, 80th Leg., R.S., Ch. 1149, § 3, 2007 Tex. Gen. Laws 3924, 3930 (current ver-

sion at Tex. Gov't Code Ann. § 29.003(g)). Subsection (g) provides that "[a] municipal court, including a municipal court of record, shall have exclusive appellate jurisdiction within the municipality's territorial limits in a case arising under Chapter 707, Transportation Code." *Id.*

Chapter 707 authorizes local municipalities to adopt and implement a camera enforcement system that imposes civil fines on owners of vehicles that have been photographed driving through red lights at designated intersections. *See* Tex. Transp. Code Ann. § 707.001-.019.

Section 707.003 of the Texas Transportation Code provides as follows:

Sec. 707.003. Installation and Operation of Photographic Traffic Signal Enforcement System.

(a) A local authority that implements a photographic traffic signal enforcement system under this chapter may:

(1) contract for the administration and enforcement of the system; and

(2) install and operate the system or contract for the installation or operation of the system.

(b) A local authority that contracts for the administration and enforcement of a photographic traffic signal enforcement system may not agree to pay the contractor a specified percentage of, or dollar amount from, each civil penalty collected.

(c) Before installing a photographic traffic signal enforcement system at an intersection approach, the local authority shall conduct a traffic engineering study of the approach to determine whether, in addition to or as an alternative to the system, a design change to the approach or a change in the signali-

---

**5.** The trial court has not yet determined whether the class should be certified. We express no opinion on the validity of the alleged class.

zation of the intersection is likely to reduce the number of red light violations at the intersection.

(d) An intersection approach must be selected for the installation of a photographic traffic signal enforcement system based on traffic volume, the history of accidents at the approach, the number or frequency of red light violations at the intersection, and similar traffic engineering and safety criteria, without regard to the ethnic or socioeconomic characteristics of the area in which the approach is located.

(e) A local authority shall report results of the traffic engineering study required by Subsection (c) to a citizen advisory committee consisting of one person appointed by each member of the governing body of the local authority. The committee shall advise the local authority on the installation and operation of a photographic traffic signal enforcement system established under this chapter.

(f) A local authority may not impose a civil penalty under this chapter on the owner of a motor vehicle if the local authority violates Subsection (b) or (c).

(g) The local authority shall install signs along each roadway that leads to an intersection at which a photographic traffic signal enforcement system is in active use. The signs must be at least 100 feet from the intersection or located according to standards established in the manual adopted by the Texas Transportation Commission under Section 544.001, be easily readable to any operator approaching the intersection, and clearly indicate the presence of a photographic monitoring system that records

violations that may result in the issuance of a notice of violation and the imposition of a monetary penalty.

(h) A local authority or the person with which the local authority contracts for the administration and enforcement of a photographic traffic signal enforcement system may not provide information about a civil penalty imposed under this chapter to a credit bureau, as defined by Section 392.001, Finance Code.

*Id.* at § 707.003.[6]

### THE CITY'S RED LIGHT CAMERA ORDINANCE

On July 21, 2009, the City of Willis enacted Ordinance No. 09-0721A, wherein the City adopted a red light camera enforcement system for the City for three intersections within the City limits. Willis, Tex., Code of Ordinances ch. 70. The City's Red Light Camera Ordinance provides that the owner of a motor vehicle that runs a red light is liable for a civil penalty of $75, and if payment is late, an additional penalty of $25. *Id.* § 70.04. The notice of violation is to be mailed to the owner of the vehicle at the address indicated on the state's registration records not later than the thirtieth day after the violation is alleged to have occurred. *Id.* § 70.05(B). The notice shall contain (1) a description of the violation alleged; (2) the location of the intersection where the violation occurred; (3) the date and time of the violation; (4) the name and address of the owner of the vehicle involved in the violation; (5) the registration number displayed on the vehicle's license plate; (6) a copy of the recorded image of the area of the license plate where the registration number appears for the vehicle involved in the violation; (7) the amount of civil penalty for which the own-

---

**6.** This is not the first appeal filed in our court pertaining to red light camera ordinances. In *City of Cleveland v. Keep Cleveland Safe,* 500 S.W.3d 438 (Tex. App.—Beaumont 2016, no pet.) this court discussed the use of the petition and referendum process that the citizens in Cleveland invoked to eliminate the use of Cleveland's red light cameras.

er is liable; (8) the number of days that the person has within which to either pay or contest the imposition of the civil penalty as well as a statement that the person incurs a late payment penalty of $25 if the civil penalty is not paid or if the person does not contest the imposition of the civil penalty; (9) a statement that the owner of the vehicle in the notice of violation may elect to pay the civil penalty by mail instead of appearing at the time and place of the administrative adjudication hearing; and (10) information that informs the vehicle owner named in the violation:

    (a) Of the owner's right to contest the imposition of the civil penalty in an administrative adjudication hearing;

    (b) That the imposition of the civil penalty may be contested by submitting a written request for an administrative adjudication hearing before the expiration of the deadline for payment of the civil penalty;

    (c) That failure to pay the civil penalty or timely contest liability for the penalty in a timely manner is an admission of liability and a waiver of the owner's right to appeal the imposition of the civil penalty; and

    (d) That if the owner of the motor vehicle fails to timely pay the amount of the civil penalty imposed against the owner:

        1. An arrest warrant will not be issued for the owner, and

        2. The imposition of the civil penalty will not be recorded on the owner's driving record.

*Id.* § 70.05(C).

The City's Red Light Camera Ordinance provides that failure to pay the civil penalty, or to timely contest liability for the penalty, or failure to appear at the administrative hearing after requesting one, results in the owner of the vehicle being considered to have admitted liability for the full amount of the civil penalty and to have waived the owner's right to appeal the imposition of the civil penalty. *Id.* § 70.06. The City's Red Light Camera Ordinance authorizes the City to direct the Montgomery County Tax Assessor and the Texas Department of Transportation to refuse to register a motor vehicle alleged to have been involved in a violation if the owner of the vehicle is delinquent in the payment of the civil penalty. *Id.* § 70.05(F). The City's Red Light Camera Ordinance also provides for an administrative adjudication hearing to contest the imposition of the civil penalty. *Id.* § 70.09. At the conclusion of an administrative adjudication hearing, the hearing officer shall enter either a finding of liability for the civil penalty or a finding of no liability for the civil penalty. A finding under this subsection must be in writing and be signed and dated by the hearing officer. *Id.* § 70.09(G).

The City's Red Light Camera Ordinance also provides a procedure for an appeal from the administrative adjudication hearing, allowing an appeal from the hearing officer's determination of liability to be taken to the City's municipal court. *Id.* § 70.11. The appeal must be filed before the thirty-first day after the date on which the administrative adjudication hearing officer entered the finding of liability for the civil penalty, and must be accompanied by payment of the costs required by law for the court. *Id.* § 70.11(B). An appeal stays enforcement and collection of the civil penalty imposed against the owner of the motor vehicle. *Id.* § 70.11(D). The municipal court then determines the appeal by trial de novo. *Id.* § 70.11(C), (E). Any person who is found liable for a civil penalty after an appeal hearing shall pay the civil penalty within ten days of the hearing. *Id.* § 70.11(F).

The City's Red Light Camera Ordinance also provides (i) that the imposition of a civil penalty under the ordinance is not a criminal conviction, (ii) that information concerning a civil penalty cannot be provided to a credit bureau, (iii) that failure to pay the civil penalty does not result in an arrest warrant and is not recorded on the owner's driving record; however, (iv) the city attorney is authorized to file suit to enforce collection of the civil penalty. *Id.* § 70.12.

Under section 707.014(h), if a person is found liable for violating a red light camera ordinance, the finding of liability "must specify the amount of the civil penalty for which the person is liable." Tex. Transp. Code Ann. § 707.014(h) (West 2011). The owner's failure to either pay the civil penalty or to timely contest liability constitutes a conclusive admission of liability and waives the owner's right to appeal to municipal court. *Id.* §§ 707.012, 707.016(a)(2) (West 2011). The City's Red Light Camera Ordinance incorporates the administrative procedure outlined in Chapter 707, including an administrative adjudication hearing if the owner of the vehicle challenges the imposition of the civil penalty, and it expressly provides for an appeal to the municipal court. *See id.* §§ 707.014, 707.016 (West 2011).

### ALLEGATIONS MADE BY PLAINTIFFS

Plaintiffs allege in their First Amended Petition as follows:

8.

This is an action under the Uniform Declaratory Judgment Act (Chapter 37.001 et. seq. of the Civil Practice and Remedies Code) to declare Chapter 707 of the Texas Transportation Code (hereinafter referred to as "Chapter 707") and Ordinance 09-[0]721A of the City of Willis, passed July 21, 2009, enacting Willis Ordinances Sections 70.01 through 70.12 (hereinafter "the Ordinance"), unconstitutional under the Texas Constitution. In the alternative, this action further seeks declaratory judgment that Defendants Nowak, Reed and Forestier, acting in their official capacities with the City of Willis, either singularly or in combination, have authorized and permitted the installation and operation of red light camera systems in the City of Willis in violation of Chapter 707 and the Ordinance, and in their official capacities, have caused the issuance of Notices of Violation and collection of fines therefrom which are invalid, unlawful, illegal, void, of no effect and/or unauthorized because of the Defendants' failure to comply with the traffic engineering study requirement imposed by Section 707.003(c) of the Texas Transportation Code and/or Willis ordinance Section 70.03(A) necessary to allow the City of Willis and the other Defendants to assess and collect a red light camera penalty.

9.

This suit also seeks an injunction against Defendants from operating any red light camera systems and from attempting to enforce any alleged red light camera violations entirely, because of the unconstitutionality of Chapter 707 and the Ordinance, or alternatively, in the unlikely event that Chapter 707 and the Ordinance are found constitutional, to have Defendants enjoined from operating and enforcing any red light camera penalties unless and until they have complied with the traffic engineering study requirement necessary under Chapter 707 and the Ordinance to allow the assessment and collection of a red light camera penalty.

10.

Additionally, Plaintiffs, who have received and paid any such unlawful red

light camera penalties/fines assessed by the City of Willis and/or any of the other Defendants, either singularly [or] in combination, pursuant to the City of Willis' illegal red light camera enforcement system, seek the refund of all of the red light camera fines illegally assessed and appropriated by Defendants. Alternatively, Plaintiffs, who have received and paid any such unlawful red light camera penalties/fines assessed by the City of Willis and/or any of the other Defendants, either singularly [or] in combination, pursuant to the City of Willis' illegal red light camera enforcement system, seek, as the remedy afforded them under Article I, Section 17 of the Texas Constitution, the refund of all of the red light camera penalties/fines illegally assessed and appropriated by Defendants. Plaintiff estimates that the amount in controversy for these claims, exclusive of interest and costs, is over $1,000,000 but less than $5,000,000.

Appellees admit in their First Amended Petition that each of them received notices of violation for allegedly running a red light. According to Appellees, they were notified that the civil penalty for such violation was $75.00, and that a late fee of $25.00 would be taxed against them if the civil penalty was not paid timely. The Appellees contend that they paid the civil penalty pursuant to the notice of violation, and they allege that they paid such amounts under duress due to "the possible threat of damage to his or her credit, harassment from a collection agency, and the loss of the right to renew his or her vehicle registration[.]"

According to the appellate record, none of the Plaintiffs filed a written request for an administrative adjudication hearing to contest the imposition of the civil penalty as permitted by section 70.09 of the City's Red Light Camera Ordinance, none of

them received a finding of liability by an administrative adjudication hearing officer, and none of them filed an appeal with the clerk of the City's municipal court. *See* Willis, Tex., Code of Ordinances § 70.11.

The Plaintiffs argue that: (1) the City's Ordinance and the statute upon which it is based are both unconstitutional in violation of Article I, Section 10 of the Texas Constitution because the ordinance and statute violate their "right against self[-]incrimination, the right to confront (i.e., cross-examine) the witnesses against him, [ ] the right to a presumption of innocence, and a requirement that the State (or city in this case) prove their case beyond a reasonable doubt[;]" (2) "Chapter 707 and the [Red Light Camera] Ordinance also violate the right to due process guaranteed under Article I, Section 19 of the Texas Constitution . . . by creating an irrebutable presumption against the registered owner of a vehicle like Plaintiffs[;]" (3) they were denied "the right to a trial by jury" in violation of Article I, Section 10 of the Texas Constitution, and that "Chapter 707 and the [Red Light Camera] Ordinance are also void, in that such violate the open courts provision of Article I, Section 13 of the Texas Constitution[;]" and (4) Section 29.003(g) of the Texas Government Code violates Article V, Sections 3 and 6 of the Texas Constitution, as these provisions of the Texas Constitution confer courts of appeal with appellate jurisdiction within the limits of their respective districts.

PLEA TO THE JURISDICTION

Defendants filed a joint Plea to the Jurisdiction. In the plea to the jurisdiction, the Defendants argued that "Plaintiffs' suit is an impermissible collateral attack on proceedings within the exclusive appellate jurisdiction of the municipal court[ ]" and that the "Plaintiffs failed to exhaust the administrative remedies" provided by the

City's Red Light Camera Ordinance and Chapter 707 of the Texas Transportation Code. Defendants also argued that the "Plaintiffs' takings claims, and their request for a refund, should be dismissed for want of jurisdiction."

### PLAINTIFFS' RESPONSE TO THE PLEA TO THE JURISDICTION

The Plaintiffs filed a response to the plea to jurisdiction and therein argued that the "so called" administrative remedies did not have to be exhausted because (1) claims for declaratory and injunctive relief that the Red Light Camera Ordinance and Chapter 707 are unconstitutional would not require exhaustion, (2) claims for a refund due to the unconstitutional nature of the statute do not require exhaustion, (3) claims for declaratory and injunctive relief that the City officials acted in an ultra vires manner in collecting fees without first obtaining a traffic engineering study do not require exhaustion, and (4) claims for reimbursement due to the ultra vires actions of the City officials in collecting fees without first obtaining a traffic engineering study do not require exhaustion. Plaintiffs further argued various exceptions to the exhaustion requirement.

The Plaintiffs attached Exhibit A to their response which included a business records affidavit and records from the Texas Board of Professional Engineers. According to the records contained in Exhibit A, on December 4, 2014, Will Boytim, a professional engineer, submitted an inquiry with the Texas Board of Professional Engineers (hereinafter referred to as the "Board") regarding the City's failure to conduct a traffic engineering study required by section 707.003(c). After receiving Boytim's December 4, 2014 letter, the Board sent a letter on December 17, 2014, to Defendant Forestier, City Manager for the City of Willis, requesting the City to respond and provide evidence that the City had a professional engineer conduct the required study. On February 17, 2015, the Willis City Attorney e-mailed a response, which included a January 20, 2015 letter and enclosures, to the Board. In the letter from the City Attorney, the City responded to and disagreed with the Board as follows:

The City of Willis complied with Section 707.003 of the Texas Transportation Code and Willis Ordinance No. 09-07221A, which both call for a traffic engineering study to be performed to determine whether, in addition to or as an alternative to a red light camera system, additional changes should be made at the intersection in order to reduce red light violations at the intersection. [citation omitted] Both the Transportation Code and the Willis City ordinance require that the traffic study be provided to a citizen advisory committee, which was to review the study and then advise the local authority on the installation and operation of the red light camera system. [citation omitted]

The City, in conjunction with its red light camera system vendor American Traffic Solutions, conducted the study of intersections under consideration by the City ... and provided the results of that study to the Willis Citizen Advisory Committee. Based on this study, the Committee recommended the installation of red light cameras at three intersections in the Fall of 2009. Copies of the study, along with the minutes of the meeting of the Willis Citizen Advisory [C]ommittee are included as Attachment B.

Chapter 707 of the Transportation Code does not require that a professional engineer perform the study contemplated by Section 707.003. The Texas Department of Transportation also does not

require engineers to conduct Section 707.003 traffic studies. . . .

In response to the letter from the City Attorney, the Board responded with another letter as follows:

Your email dated February 17, 2015, regarding a traffic engineering study (TES) prior to the installation of red light cameras at various locations throughout the City of Willis (City) has been thoroughly reviewed. In comparing your response with the provisions of the Texas Engineering Practice Act (Act) and our Board rules, we were unable to locate, find, or prove that an engineer performed the TES prior to the installation of the red light cameras, as required by Texas Transportation Code (Code), Chapter 707.003(c) and Section 1001.407 of the Texas Engineering Practice Act (Act) (copies enclosed). . .

Although it was confirmed by Mr. Robert Zaitooni, P.E., from America Traffic Solutions, Inc. (ATS), that he was the engineer of record who conducted a study of the City's intersections under consideration by the City for installation of the red light cameras, he could not recall the extent of his work; but, it was recommended in ATS' "Agreement" with the City that an independent traffic engineering study be performed or obtained before the red light camera system was to be installed.

We request that the City engage a qualified and competent Texas licensed professional engineer to conduct a complete review of the data contained in the ATS report, visit the sites where red light cameras have been installed and prepare an "after-the-fact" (ATF) engineer report to confirm that such cameras were required and installed as required by the Texas Department of Transportation. . . .

Thereafter, the City filed "Defendants' Objections to Plaintiffs' Exhibit A, Attached to Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Response to Defendants' Plea and Motion to Strike Exhibit A[.]" The City argued that the factual issue regarding whether or not an engineering report was properly obtained was irrelevant to determining the trial court's jurisdiction, and further that the exhibit attached to Plaintiffs' Response to the Plea was incomplete because an ATF report was obtained and sent to the Board. The City also made other challenges to the statements made by representatives of the Board. On April 21, 2016, the trial court signed an order denying the plea to the jurisdiction.

ARGUMENTS PRESENTED ON APPEAL

In one appellate issue Appellants argue that the trial court erred in denying their Plea to the Jurisdiction. According to the Appellants, "the Garcia Parties pleaded causes of action that either (i) affirmatively demonstrate the court lacks jurisdiction thereof, or, (ii) when viewed in conjunction with the uncontroverted evidence, demonstrate the court lacks jurisdiction thereof." Appellants argue that the Plaintiffs failed to exhaust administrative remedies "provided by Chapter 707" and the City's Red Light Camera Ordinance, and therefore the trial court lacked jurisdiction to hear their ultra vires claim for declaratory and injunctive relief. The Appellants also contend that "the Legislature precluded the Garcia Parties' *ultra vires* suit for declaratory and injunctive relief in the district court because it vested 'exclusive appellate jurisdiction within the municipality's territorial limits in a case arising under Chapter 707, Transportation Code.'" *See* Tex. Gov't Code Ann. § 29.003(g) (West 2008). The Appellants also contend that the trial court lacked jurisdiction over the claims for retrospective relief, i.e., damages,

based on Plaintiffs' ultra vires claims and the only relief available is prospective. Furthermore, the City contends that "the Garcia Parties' pleadings, which alleged *ultra vires* acts on the part of City Officials—acts taken without legal authority—affirmatively demonstrated preclusion of their takings claim."

Appellees argue in response that their lawsuit is not barred by the failure to exhaust the administrative remedies outlined in Chapter 707 or in the City's Red Light Camera Ordinance because (1) the exhaustion of remedies doctrine does not apply to their claims for declaratory and injunctive relief asserting the unconstitutionality of the statute or ordinance, or claims for ultra vires acts; (2) primary jurisdiction was not created for the administrative remedies (administrative adjudication hearing and appeal to municipal court) Defendants assert had to be exhausted; (3) certain exceptions to the primary jurisdiction doctrine apply, so that no exhaustion of remedies is required; and (4) exclusive jurisdiction is not created by the administrative remedies set forth in Chapter 707 or in the City's Ordinance that the Defendants assert had to be exhausted.

### STANDARD OF REVIEW

By filing a plea to the jurisdiction, the City and the City Officials have challenged the trial court's power to exercise subject matter jurisdiction over the case. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction[.]"). A plea to the jurisdiction is a dilatory plea, which is used to defeat a plaintiff's cause of action without regard to whether the plaintiff's claims have merit. *See id.* Generally, absent a statute where the Legislature expressly waived a governmental entity's immunity from suit, trial courts lack

subject matter jurisdiction over suits against governmental entities, including cities. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006). The question of whether a trial court had subject matter jurisdiction over a case is reviewed as a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We apply a de novo standard when reviewing trial court rulings on pleas to the jurisdiction. *Id.*; *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

District courts are courts of general jurisdiction and are presumed to have subject matter jurisdiction unless a contrary showing is made, such as when the legislature bestows exclusive original jurisdiction on an administrative body. *See* Tex. Const. art. V, § 8; *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). An administrative body has exclusive jurisdiction when a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem which the regulation addresses. *Subaru*, 84 S.W.3d at 221. Typically if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Id.* Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Id.* Similarly, a governmental entity may file a plea to the jurisdiction to assert that the plaintiff failed to exhaust administrative remedies. *See Appraisal Review Bd. of Harris Cty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

On appeal of a trial court's ruling on a plea to the jurisdiction, the appeals court "may not weigh the claims' merits but must consider only the plain-

tiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). When the plea to the jurisdiction presents a challenge to the sufficiency of the plaintiff's pleadings, we are required to determine whether the plaintiff's pleadings allege "facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *See Miranda*, 133 S.W.3d at 226. To do so, we construe the pleadings in the plaintiff's favor and look to the plaintiff's intent. *See Brown*, 80 S.W.3d at 555. When the plaintiff's pleadings affirmatively negate the existence of jurisdiction, "then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda*, 133 S.W.3d at 227. When a court determines that the plaintiff's pleadings are deficient but also determines that the deficiency in the pleadings can be cured, the plaintiff "deserves 'a reasonable opportunity to amend' unless the pleadings affirmatively negate the existence of jurisdiction." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (quoting *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)); *Miranda*, 133 S.W.3d at 226-27; *Brown*, 80 S.W.3d at 555. On the other hand, when a court determines that an amended pleading would not cure the defects in the plaintiffs' claims, the court need not grant the plaintiffs further opportunity to amend. *Koseoglu*, 233 S.W.3d at 840.

### ANALYSIS

The Defendants contend that the Plaintiffs failed to exhaust the "exclusive, legislatively mandated administrative remedies[ ]" set forth in Chapter 707 of the Texas Transportation Code, section 29.003 of the Texas Government Code, and as provided for in the City's Red Light Camera Ordinance. According to the City and the City Officials, the Plaintiffs "cannot bring a lawsuit to challenge actions that they could have challenged during the administrative adjudication hearing, and, if necessary, during an appeal of a finding of liability at the administrative adjudication hearing." Citing *Edwards v. City of Tomball*, 343 S.W.3d 213, 221 (Tex. App.—Houston [14th Dist.] 2011, no pet.), the Defendants argue that Chapter 707 sets forth an exclusive procedure and "pervasive regulatory scheme" that must be exhausted prior to seeking judicial relief.

In *Edwards*, the plaintiff received numerous notices of violations of the Tomball red light camera ordinance. *Id.* at 217. As to one of the violations, Edwards requested an administrative hearing and received a finding from the administrative officer that she was "liable." *Id.* at 218. As to other violations, Edwards did not seek an administrative hearing. *Id.* Edwards then intervened in a lawsuit filed by a third party against Tomball. *Id.* Edwards alleged that several procedural irregularities rendered all of the proceedings against her void, claiming in part that the City of Tomball had failed to conduct the traffic engineering study as required by section 707.003(c) of the Texas Transportation Code. *Id.* at 219. Edwards sought a declaratory judgment that the fees and penalties she paid were void, illegal, or unauthorized, and that as to the other fees she had not paid, she was not liable and the City of Tomball should be enjoined from further collection efforts. *Id.* In her Third Amended Original Petition Edwards also sought class certification for similarly situated individuals, but the trial court did not rule on her request for certification before it granted the City of Tomball's Second Plea to the Jurisdiction. *Id.* at 219 n.3.

In its Second Plea to the Jurisdiction the City of Tomball argued that the claims were barred by sovereign immunity, and that the district court action was barred by the fact that Tomball's municipal court is

vested with exclusive appellate jurisdiction and Edwards failed to exhaust administrative remedies. *Id.* at 219. The trial court granted the plea to the jurisdiction without specifying its reasons. *Id.*

On appeal, the Fourteenth Court of Appeals reviewed Chapter 707 and the statutory scheme. *Id.* at 220-23. The court examined the regulatory scheme in Chapter 707 and stated as follows:

> When the Legislature enacted the pervasive regulatory scheme found in Chapter 707, we conclude its intent in doing so was to ensure that the vast majority of claims arising out of the use of red light camera systems would be resolved at the administrative level and the creation of this new enforcement system would not overburden the courts. *See MAG-T, L.P. v. Travis Central Appraisal Dist.*, 161 S.W.3d 617, 624 (Tex. App.—Austin 2005, pet. denied) (addressing real property tax appraisals). An administrative agency has exclusive jurisdiction when the Legislature grants it the sole authority to make an initial determination in a matter and the regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means for remedying issues related to that scheme. *Blue Cross Blue Shield of Tex., Inc. v. Duenez*, 201 S.W.3d 674, 675-76 (Tex. 2006). When an agency or other court has exclusive jurisdiction to handle issues arising under the regulatory scheme, a district court does not normally have subject matter jurisdiction to address those same issues. *See [In re] Southwestern Bell Tel. Co., L.P.*, 235 S.W.3d [619,] 624-25 [ (Tex. 2007) ]. We conclude that Chapter 707 of the Transportation Code authorized municipalities such as Tomball to establish a red light camera enforcement system. We further conclude that if the municipality elects to set-up a red light camera enforce-

ment system, Chapter 707 requires that municipality to establish an exclusive administrative scheme to handle disputes arising out of that system.

343 S.W.3d at 221-22. The Fourteenth Court of Appeals rejected the argument that the alleged procedural deficiencies in Tomball's efforts to enforce the ordinance rendered the actions of the City of Tomball or its officials "void, illegal, or unauthorized" and the court rejected the argument that any such irregularities would allow the alleged violator to "ignore the administrative process established by the Legislature." *Id.* at 222.

We agree with the Fourteenth Court of Appeals that Chapter 707 legislatively authorizes municipalities such as the City of Willis to establish a red light camera enforcement system. *See id.* at 221-22. Once the municipality chooses to set up a red light enforcement program, Chapter 707 requires the municipality to establish an exclusive administrative procedure to handle disputes relating to the red light enforcement program. Furthermore, taking the allegations in Plaintiffs' pleading as true and assuming without deciding that the City of Willis failed to conduct a traffic engineering study as provided for in section 707.0031 before it installed the red light cameras, we conclude that such irregularity does not allow a party to completely circumvent or ignore the administrative procedures in the City's Red Light Camera Ordinance. *See id.* at 222.

Appellees contend that *Edwards* does not apply because in *Edwards* the plaintiffs did not make the same arguments or claims, and further Appellees argue that "*Edwards* is simply wrong under the law, since the exhaustion of remedies doctrine does not apply to constitutional or ultra vires claims like what is being brought in this case."

We agree that the plaintiffs in *Edwards* did not challenge the constitutionality of either Chapter 707 or of the ordinance. *See generally id.* at 213-26. But, like the Plaintiffs in the case at bar, the plaintiffs in *Edwards* alleged that the actions of the City of Tomball were illegal and that the City Officials acted in an ultra vires manner, and that the claims should not be barred by exhaustion requirements because the plaintiffs only sought a declaratory judgment. *See id.* at 221-23. The Fourteenth Court of Appeals expressly rejected such arguments. *See id.* Therefore, we conclude that the reasoning in *Edwards* is equally applicable to the facts before us.

▇▇▇ Appellees argue that their lawsuit is not barred by exhaustion or immunity because exceptions to the exhaustion requirement would apply and further that Appellants do not have immunity for claims for declaratory relief challenging the validity of a statute, for injunctive relief, for a claim seeking a reimbursement of an unlawful or illegal fee, tax or penalty, for takings claims under Article I, Section 17 of the Texas Constitution, and for claims against the City Officials for ultra vires acts.

▇▇▇ As a general rule, "sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief." *Patel v. Tex. Dep't of Licensing & Regulation,* 469 S.W.3d 69, 75-76 (Tex. 2015). In the case at bar, Appellees seek more than equitable relief. In their Petition, Appellees' state that "the amount in controversy in this matter, including attorney's fees, but exclusive of interest and costs, is over $1,000,000, but less than $5,000,000." They are making a claim for "[r]eimbursement/[r]efund of [f]unds [p]aid" because the fees were "illegally collected." Alternatively, they seek to be "reimbursed for the red light camera penalties paid, because of

the failure of Willis to comply with the conditions that must be met before Willis could install a red light camera enforcement system" in that the City failed to conduct the required traffic engineering study. "It is well settled that 'private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages ... as a declaratory-judgment claim.'". *City of El Paso v. Heinrich,* 284 S.W.3d 366, 371 (Tex. 2009) (quoting *IT-Davy,* 74 S.W.3d at 856). Therefore, a city's immunity from money damages is not waived simply by recasting the claim as one for declaratory relief. *See, e.g., City of Dallas v. Albert,* 354 S.W.3d 368, 378 (Tex. 2011) ("[A] party cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for declaratory judgment.")

▇▇▇ A suit against a state official may still proceed even in the absence of a waiver of immunity if the official's actions are ultra vires. *Heinrich,* 284 S.W.3d at 372. An ultra vires claim requires a plaintiff to "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* The Texas Supreme Court has recently clarified what it means for an official to act "without legal authority." *See Hous. Belt & Terminal Ry. Co. v. City of Houston,* 487 S.W.3d 154, 158 (Tex. 2016). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires,* if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.* "Ministerial acts[,]" on the other hand, are those "'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Sw. Bell Tel., L.P. v. Emmett,* 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Cham-*

*bers*, 883 S.W.2d 650, 654 (Tex. 1994)). In *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017), the Texas Supreme Court further explained:

> The basic justification for this *ultra vires* exception to sovereign immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the state at all. *Cobb v. Harrington*, [144 Tex. 360] 190 S.W.2d 709, 712 (1945). Consequently, *"ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state" over one of its agents. *Heinrich*, 284 S.W.3d at 372.

Mere allegations that an official is not fully complying with regulatory requirements would be insufficient to invoke the ultra vires exception to the exhaustion requirement. *See O'Connor & Assocs.*, 267 S.W.3d at 419 (concluding that an argument that agency hearings were being conducted in manner that did not fully comply with statutory procedural requirements was insufficient to invoke ultra vires exception); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied) (allegations that agency failed to provide required notice and information as part of application process were insufficient to invoke exception); *see also Janek v. Gonzalez*, No. 03-11-00113-CV, 2013 WL 1748795, at *8 (Tex. App.—Austin Apr. 17, 2013, no pet.) (mem. op.) (claims that the Commissioner of the Texas Health and Human Services Commission failed to comply with statutory and regulatory requirements under the Food Stamp Program were insufficient to invoke the ultra vires exception because they did not involve actions outside the Commissioner's authority and the applicants failed to exhaust administrative remedies); *Tex. Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) (explaining that claim that agency

had authority to interpret statute but had interpreted provision incorrectly was insufficient to invoke ultra vires exception because the possibility that the agency might interpret provision incorrectly did not destroy its authority to make that determination).

▪ The Appellees also contend that the City Officials acted in an ultra vires manner because they failed to conduct a traffic engineering study before implementing the red light program. The Appellees argued below and on appeal that the study completed by ATS was not a "traffic engineering study" because it did not comply with the regulatory requirements of the Texas State Board of Engineering. The Appellees contend they performed the required "study," and that the study that was completed by ATS complied with Chapter 707 even though it was not performed by a registered professional engineer. We need not determine whether the City completed a traffic engineering study as required by the statute because we conclude that the failure to strictly comply with that provision of the statute would, under the facts of this case, be insufficient to trigger the ultra vires exception to the exhaustion requirement because such allegations would be nothing more than allegations that the officials have failed to "fully comply" with regulatory requirements, which would not make the actions of the official ultra vires. *See O'Connor & Assocs.*, 267 S.W.3d at 419.

▪ Appellees also argue that there is an exception to administrative exhaustion when constitutional questions are involved, citing to *City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012) and *Central Power and Light Company v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997). It is generally true that sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable

relief. *See Patel,* 469 S.W.3d at 75-76 ("The State acknowledges this Court's decisions to the effect that sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief.") (citing *City of Elsa v. M.A.L.,* 226 S.W.3d 390, 392 (Tex. 2007); *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex. 1995)).

Nevertheless, the Court "has never globally exempted claims based on the Texas constitution from statutory exhaustion-of-administrative-remedies requirements[.]" *Clint Indep. Sch. Dist. v. Marquez,* 487 S.W.3d 538, 552 n.9 (Tex. 2016). In *Marquez,* the Court stated further that, "[t]o the contrary, we have, at least on some occasions, required exhaustion of administrative remedies before asserting claims under the Texas constitution." *Id.* (citing *Stewart,* 361 S.W.3d at 579; *Cameron Appraisal Dist. v. Rourk,* 194 S.W.3d 501, 502 (Tex. 2006); *Tex. Water Comm'n v. Dellana,* 849 S.W.2d 808, 810 (Tex. 1993)); *City of Dallas v. VSC, LLC,* 347 S.W.3d 231, 236-37 (Tex. 2011) (property owner barred from bringing constitutional takings claim where owner failed to pursue administrative remedy that could have resulted in return of property or just compensation).

The reasoning of the Court in *Marquez* and *Stewart* is equally applicable to the claims asserted in the case at bar where the Plaintiffs have failed to exhaust their administrative remedies as provided for in the governing statute which the Legislature intended to be the exclusive means for remedying issues related to that scheme. *See Marquez,* 487 S.W.3d at 544; *Stewart,* 361 S.W.3d at 579. Our conclusion would not change even if we assume that Plaintiffs are correct in their assertion that the administrative hearing officer and the municipal court lacked authority to grant all of the relief that Plaintiffs requested. *See Marquez,* 487 S.W.3d at 557. Accordingly, we conclude that the trial court erred in denying the Appellants' plea to the jurisdiction as to all the claims asserted by the Plaintiffs. We further conclude that an amended pleading would not cure the defects in the Plaintiffs' claims and therefore we need not grant the Plaintiffs further opportunity to amend. *See Koseoglu,* 233 S.W.3d at 840.[7]

Having sustained the Appellants' sole issue on appeal and having concluded that the trial court erred in failing to grant the plea to the jurisdiction because the Plaintiffs failed to exhaust their administrative remedies, we reverse and render judgment for the Defendants.

REVERSED AND RENDERED.

---

7. Citing to *Lowenberg v. City of Dallas,* 261 S.W.3d 54, 59 (Tex. 2008), Plaintiffs also argued that the City is directly liable, and has no immunity, for Plaintiffs' direct claims against the City for reimbursement of the "unlawful" fee or penalty. In their appellate briefing, Plaintiffs concede that *Lowenberg* would only apply in the event this Court finds the ordinance and statutory scheme that authorized it to be unconstitutional. We also note that the facts in the case at bar would be distinguishable from *Lowenberg.* In *Lowenberg,* the City of Dallas promulgated a registration fee upon commercial builders to finance fire-prevention services throughout the City of Dallas. *Id.* at 56. Failure to pay the fee could result in a criminal fine of up to $2,000. *Id.* Lowenberg paid the fee but sued for a refund for himself and others who had paid the fee, alleging that the fee was an unlawful occupation tax. *Id.* The Texas Supreme Court held that the fire prevention fee was an unlawful occupation tax because the Dallas fee generated revenue that greatly exceeded its regulatory purpose and because the city had completely shifted the tax burden from the taxpayers to the commercial builders. *Id.* at 57-58. In the present case, the fines generated by the red light cameras do not involve an unlawful tax.