Greg Neeley, Justice
Appellants, William Paul Hunt and ADE-WIFCO Steel Products, Inc. (ADE), appeal from the trial court's order granting pleas to the jurisdiction filed by Appellees, the City of Diboll (the City), John McClain, in his official capacity as Mayor of the City of Diboll, Steve Baker, in his official capacity as Chief of Police of the City of Diboll, and Gerry Boren, in his official capacity as City Manager of the City of Diboll (the City officials), and American Traffic Solutions, Inc. and American Traffic Solutions, LLC (ATS). Appellants raise three issues on appeal. We affirm in part, and reverse and remand in part.
BACKGROUND
The City of Diboll is a home-rule municipality. Diboll's city charter requires that ordinances imposing a "penalty, fine, or *416 forfeiture" are not effective until published. In 2006, the Diboll city council enacted ordinance 06-07, which authorizes the use of red light cameras to capture red light violations at roadway intersections. A violation of this ordinance is a criminal offense and carries a penalty of $100. In 2014, the city council enacted ordinance 01-14, which tracks the provisions of Chapter 707 of the Texas Transportation Code, and provides a $75 civil penalty for red light violations captured by a red light camera.[1] Ordinance 01-14 provides that (1) the registered owner of the vehicle is responsible for the $75 penalty; and (2) an individual may contest liability by requesting an administrative hearing, the timelines and procedures for which are set forth in the ordinance. ATS, a private company, contracted with the City to implement and operate Diboll's red light camera system. ATS provides a "turnkey solution" for the operation and enforcement of Diboll's red light camera system which includes (1) collecting the funds into a special account, (2) providing a web based citation processing system, (3) mailing the violation notices, (4) obtaining vehicle registration to issue citations, and (5) providing expert testimony in court.
In 2015, Appellants received notices of infractions for red light violations captured by red light cameras in the City of Diboll. The notices alleged violations of ordinance 06-07 and stated the registered owners of the vehicles owed a $75 civil penalty to the City. The notices also contained instructions for the payment of the penalty and on how to request an administrative hearing to contest liability. Hunt did not pay the penalty, and sent a letter to the City stating that he did not consent to a non-judicial decision, demanding a jury trial, and asserting other constitutional rights guaranteed in criminal proceedings.
A law firm representing the City subsequently sent a notice to Hunt seeking to collect the unpaid penalty. The notice indicated Hunt owed a $125 penalty for the red light violation. The City set an administrative hearing on the violation, and sent notice to Hunt, who did not appear for the hearing. Subsequently, Diboll placed a registration hold on Hunt's vehicle. Unlike Hunt, ADE paid the $75 penalty assessed against it.
At the time Appellants received their notices of infraction, neither ordinance 06-07 nor ordinance 01-14 had been published in the City's official newspaper. Not until November 2016, did the City publish ordinance number 01-14 in its official newspaper.
Appellants brought an action, on their own behalf and on the behalf of a putative class of individuals assessed red light penalties by Diboll, pursuant to the Uniform Declaratory Judgment Act (UDJA) challenging the validity of ordinances 06-07 and 01-14. Alternatively, they sought a declaratory judgment that Baker, McClain, and Boren, in their official capacities, acted ultra vires by installing red light camera systems and collecting red light camera penalties. Appellants sought an injunction prohibiting the City and its officials from operating red light camera systems and enforcing red light penalties. They also made a claim for reimbursement of the red *417 light penalties, or alternatively, a refund of penalties paid under Article I, Section 17 of the Texas Constitution. Appellants also sued ATS for fraud and violations of the Deceptive Trade Practices Act (DTPA).
The City, its officials, and ATS filed pleas to the jurisdiction alleging the trial court lacked subject matter jurisdiction to hear Appellants' claims against them. In its original and supplemental pleas to the jurisdiction, the City argued that the trial court lacked subject matter jurisdiction for the following reasons: (1) Appellants failed to exhaust their administrative remedies, (2) Hunt lacked standing to seek reimbursement because he failed to pay the $75 penalty, (3) Appellants lacked standing to seek declaratory relief regarding the constitutionality of Diboll's red light ordinance because the pleadings complained of violations of criminal protections pursuant to the Texas Constitution, but neither Hunt nor ADE were actually charged with a criminal offense, (4) Appellants' pleadings affirmatively negate jurisdiction on their takings claims because the pleadings allege that the taking occurred pursuant to unlawful or unauthorized authority, and (5) the City's immunity had not been waived.
The trial court granted both pleas to the jurisdiction and dismissed all of Appellants' claims against the City, its officials, and ATS, with prejudice.[2] Consequently, the trial court did not rule on Appellants' petition for class certification or their motion for summary judgment. This appeal followed.
CLAIMS AGAINST THE CITY AND ITS OFFICIALS
In Appellants' first issue, they contend the trial court erred in granting the City's plea to the jurisdiction because (1) they were not obligated to exhaust their administrative remedies, as ordinance 06-07 is a criminal ordinance containing no administrative remedies and ordinance 01-14 had not been published at the time penalties were assessed, (2) their claims are not barred by immunity, and (3) they have standing to bring their claims because the City's subsequent publication of ordinance 01-14 did not render their claims moot.
Standard of Review
A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the *418 claims asserted have merit. Id. The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. Id. To prevail on a plea to the jurisdiction, a defendant must demonstrate an incurable jurisdictional defect apparent on the face of the pleadings rendering it impossible for the plaintiff's petition to confer jurisdiction on the district court. MAG-T, L.P. v. Travis Cent. Appraisal Dist. , 161 S.W.3d 617, 624 (Tex. App.-Austin 2005, pet. denied) (citing Bybee v. Fireman's Fund Ins. Co. , 160 Tex. 429, 438, 331 S.W.2d 910, 917 (1960) ); City of San Angelo v. Smith , 69 S.W.3d 303, 305 (Tex. App.-Austin 2002, pet. denied).
Whether a trial court has subject matter jurisdiction is a question of law. Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004). Therefore, we review a challenge to the trial court's subject matter jurisdiction de novo. Id. In performing this review, an appellate court does not look to the merits of the case, but considers only the pleadings and evidence relevant to the jurisdictional inquiry. See Blue, 34 S.W.3d at 554-55. We construe the plaintiff's pleadings liberally in the plaintiff's favor and look to the pleader's intent. Miranda , 133 S.W.3d at 226. We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. Id. at 228.
If a plaintiff fails to plead sufficient facts affirmatively demonstrating the trial court's jurisdiction, but the pleadings do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. Id. at 226-27. However, if the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. Id. Also, through inaction, a plaintiff may lose the opportunity to amend. See Haddix v. Am. Zurich Ins. Co. , 253 S.W.3d 339, 347 (Tex. App.-Eastland 2008, no pet.) ; Tara Partners Ltd. v. City of S. Houston , 282 S.W.3d 564, 570 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).
As a non-movant, the plaintiff's burden is to produce evidence raising a genuine issue of material fact on the elements specified in defendant's plea. TEX. R. CIV. P. 166a(i) ; see Miranda , 133 S.W.3d at 228. If the evidence raises a fact question on jurisdiction, the plea must be denied. See, e.g., Tex. Dep't of Aging & Disability Servs. v. Loya , 491 S.W.3d 920, 923-24 (Tex. App.-El Paso 2016, no pet.). However, if the defendant's evidence is undisputed and demonstrates a lack of jurisdiction, and if the plaintiff's responsive evidence does not raise a fact question on the jurisdictional issue, as a matter of law, the trial court must grant the plea to the jurisdiction. Id. at 924.
Challenge to Ordinance 06-07
Appellants sought a declaratory judgment on grounds that ordinance 06-07, which they claim is the basis for the penalties the City has assessed against them, is unconstitutional because the ordinance deprives them of their presumption of innocence and other constitutional protections. They also sought to enjoin the City from enforcing ordinance 06-07. The City and its officials contend that Appellants were never charged with a violation of ordinance 06-07, or any criminal offense, but were only assessed civil penalties pursuant to ordinance 01-14. They further argue that Appellants must challenge the constitutionality of ordinance 06-07 in the criminal courts of jurisdiction. Appellants, in turn, argue that ordinance 06-07 is unconstitutional, and that the non-criminal enforcement *419 of the ordinance threatens their vested property rights and personal rights by assessing financial penalties and depriving them of their constitutional rights. The parties agree that ordinance 06-07 is a criminal ordinance.
The meaning and validity of a criminal statute or ordinance should usually be determined by a court exercising criminal jurisdiction in order to avoid potentially conflicting decisions between civil and criminal courts of last resort. Consumer Serv. All. of Texas, Inc. v. City of Dallas , 433 S.W.3d 796, 803 (Tex. App.-Dallas 2014, no pet.) (citing State v. Morales , 869 S.W.2d 941, 947-48 (Tex. 1994), which states, "prospect of both civil and criminal courts construing criminal statutes would tend to 'hamstring' the efforts of [law] enforcement officers, create confusion, and might result finally in precise contradiction of opinions between the [civil courts] and the Court of Criminal Appeals to which the Constitution has entrusted supreme and exclusive jurisdiction in criminal matters"). A civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute in two circumstances: (1) when there is "evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened;" and (2) when the "enforcement of an unconstitutional statute threatens irreparable injury to property rights." Morales , 869 S.W.2d at 942.
Accordingly, courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury. Id . ; Wild Rose Rescue Ranch v. City of Whitehouse , 373 S.W.3d 211, 215 (Tex. App.-Tyler 2012, no pet.) (citing Passel v. Fort Worth Indep. Sch. Dist. , 440 S.W.2d 61, 63 (Tex. 1969) ). The requirement of irreparable injury is related to the adequacy of the remedy at law. State v. Logue , 376 S.W.2d 567, 572 (Tex. 1964). The supreme court has held that the opportunity to assert the unconstitutionality of a penal provision as a defense to a criminal prosecution is an adequate remedy at law. Id . When the meaning and validity of a penal statute or ordinance can be resolved in any criminal proceeding that may be instituted and vested property rights are not in jeopardy, there is no occasion for the intervention of equity. Passel , 440 S.W.2d at 63 ; Consumer Serv. All. of Texas, Inc. , 433 S.W.3d at 804.
In this case, Appellants contend that "the non-criminal manner in which Diboll enforces Ordinance 06-07 threatens vested property rights, namely Plaintiffs' cash." We first note that only ADE, not Hunt, paid the assessed penalty. Moreover, to establish that the enforcement of an ordinance will cause irreparable harm, the complaining party must show harm other than that inherent in the prosecution for an offense. City of Dallas v. Dallas Cty Housemovers Ass'n , 555 S.W.2d 212, 214 (Tex. Civ. App.-Dallas 1977, no writ). Appellate courts have found irreparable injury in cases such as where the enforcement of the penal provision would result in the destruction of property before the provision's validity could be tested in the courts, or where the penal provision operated against the potential customers of a business, as well as against the operator. Id . In this case, the payment of a $75 fine is not tantamount to the type of injury considered to be "irreparable." Rather, a fine is inherent in the prosecution of an offense and cannot amount to irreparable injury in this case.
*420 Appellants also argue that the "ordinance threatens or impairs [their] personal rights, as the non-criminal manner in which Diboll enforces Ordinance 06-07 deprives vehicle owners like [Appellants] of all constitutional protections that would be afforded them under the Texas Constitution when charged with a criminal violation, including the right to a jury trial, the right to require the state to prove its case beyond a reasonable doubt, the presumption of innocence, and the right against self-incrimination." "If the harm alleged by a citizen flows not from enforcement of the statute, but rather, from some other cause susceptible to the equity powers of a civil court, then personal rights can serve as a sufficient justification for the granting of such equitable relief." Morales , 869 S.W.2d at 948. In this case, the alleged harm flows directly from the City's enforcement of ordinance 06-07. Accordingly, Appellants' claim is an impermissible attempt to obtain a naked declaration of the ordinance's unconstitutionality. A trial court "has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.' " Id . (quoting Malone v. City of Houston , 278 S.W.2d 204, 206 (Tex. Civ. App.-Galveston 1955, writ ref'd n.r.e.) ). Thus, under the circumstances of this case, Appellants' personal rights cannot serve as a sufficient justification for the granting of equitable relief. See Passel , 440 S.W.2d at 63-64 (stating that civil court may grant injunctive relief to protect personal rights, such as when such relief is "sought to prevent administrative enforcement of an administrative regulation adopted for the purpose of implementing the statute[ ]"); see also Morales , 869 S.W.2d at 946 (stating that in Passel , plaintiffs did not seek a naked declaration of the penal statute's unconstitutionality, but a declaration of the invalidity of the statute and an injunction against enforcement of a school district rule); Destructors, Inc. v. City of Forrest Hill , No. 2-08-440-CV, 2010 WL 1946875, at *4 (Tex. App.-Fort Worth May 13, 2010, no pet.) (mem. op.) ("Destructors is not attempting to prevent enforcement of an administrative regulation or rule; rather it is seeking a naked declaration of a penal ordinance's unconstitutionality[ ]"). As the Texas Supreme Court has explained, a personal right cannot be uniformly substituted for a property right, thereby expanding a civil court's equity jurisdiction over criminal statutes. See Morales , 869 S.W.2d at 946.
For the reasons discussed above, we conclude that Appellants made no showing that enforcement of ordinance 06-07 caused irreparable injury to personal or property rights. See ids="10021954" index="34" url="https://cite.case.law/sw2d/869/941/#p947">id. at 942. Consequently, the trial court lacked subject matter jurisdiction to hear Appellants' claims for declaratory and injunctive relief against the City. See ids="10021954" index="35" url="https://cite.case.law/sw2d/869/941/#p947">id. Therefore, the trial court did not err in dismissing Appellants' claims challenging the constitutionality of ordinance 06-07, a criminal ordinance. See ids="10021954" index="36" url="https://cite.case.law/sw2d/869/941/#p947">id. ; see also Dallas Cty. Housemovers Ass'n , 555 S.W.2d at 214.
Failure to Exhaust Administrative Remedies
Appellants' remaining claims against the City and its officials challenge the validity of ordinance 01-14 and seek reimbursement of red light penalties paid. Alternatively, Appellants allege that the City and its officials acted ultra vires in installing the red light cameras and enforcing red light penalties. In response, the City argues that the trial court did not have jurisdiction over Appellants' claims challenging the validity of ordinance 01-14 because they failed to exhaust their administrative remedies pursuant to ordinance 01-14 and Chapter 707 of the transportation code. Appellants argue that they were not obligated to exhaust administrative remedies *421 because ordinance 01-14 had not been published at the time they received their notices. The City, however, argues that (1) the Diboll city charter only requires publication of penal ordinances, (2) ordinance 01-14 was not required to be published because it did not prohibit conduct that would otherwise be legal, and (3) section 51.003 of the Texas Local Government Code cures any defects from the failure to publish ordinance 01-14 because it merely amended ordinance 06-07.
Courts of general jurisdiction are presumed to have subject matter jurisdiction absent a contrary showing that the Texas Constitution or other law has conferred jurisdiction on another court, tribunal, or administrative body. Subaru of Am., Inc. v. David McDavid Nissan, Inc. , 84 S.W.3d 212, 220 (Tex. 2002) ; see also TEX. CONST. art. V, § 8 ; TEX. GOV'T CODE ANN. §§ 24.007 -.008 (West 2004 and West Supp. 2016). Administrative bodies may exercise only those powers the law confers upon them in clear and express language. Subaru of Am., Inc. , 84 S.W.3d at 220. Courts will not imply the existence of additional authority for administrative bodies, nor may these bodies create for themselves any excess powers. Id. In deciding whether an administrative body has exclusive jurisdiction, we look to its authorizing legislation for an express grant of exclusive jurisdiction, or for a "pervasive regulatory scheme" indicating an intent to confer exclusive jurisdiction. Emps. Ret. Sys. of Tex. v. Duenez , 288 S.W.3d 905, 908-09 (Tex. 2009). Ordinarily, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of an agency's action. Subaru of Am., Inc., 84 S.W.3d at 221. "Until then the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction." Id.
Chapter 707 of the Texas Transportation Code authorizes local governments to enact ordinances to impose civil penalties on owners of vehicles photographed running a red light by a red light camera. See TEX. TRANSP. CODE ANN. § 707.002. Chapter 707 provides for an administrative adjudication hearing if the owner of the vehicle challenges liability for the civil penalty and a de novo appeal to the appropriate municipal or justice court. Id. at §§ 707.014, 707.016.
Our sister appellate courts have considered claims relating to red light camera ordinances that are similar to ordinance 01-14. Those courts have concluded that Chapter 707 creates a pervasive regulatory scheme intended to ensure that claims arising out of the use of red light camera systems would be resolved at the administrative level. Edwards v. City of Tomball , 343 S.W.3d 213, 221-22 (Tex. App.-Houston [14th Dist.] 2011, no pet.) ; City of Willis v. Garcia , 523 S.W.3d 729, 742 (Tex. App.-Beaumont 2017, pet. filed). Both the Edwards and Willis courts held that plaintiffs were required to exhaust their administrative remedies prior to bringing suit. Edwards , 343 S.W.3d at 222-23, Willis , 523 S.W.3d at 745.
This case differs from both Edwards and Willis , as the City of Diboll failed to publish its red light camera ordinance as required by the city charter. Home-rule cities, such as Diboll, derive their powers from the Texas Constitution. See TEX. CONST. art. XI, § 5 ; see also TEX. LOCAL GOV'T. CODE ANN. § 51.072 (West 2008). They possess "the full power of self-government and look to the Legislature not for grants of power, but only for limitations on their power." In re Sanchez , 81 S.W.3d 794, 796 (Tex. 2002), as supplemented on denial of reh'g (Aug. 29, 2002). The Texas Local Government Code states that home rule municipalities, such as the *422 City of Diboll, may publish a caption of an adopted ordinance that summarizes the purpose of the ordinance and any penalty for its violation in lieu of a requirement in the city's charter that the text of the ordinance be published. TEX. LOCAL GOV'T. CODE ANN. § 52.013(a) (West 2008). If the city's charter does not provide for the method of publication of an ordinance, the full text of the ordinance or a caption that summarizes the purpose of the ordinance and the penalty for violating the ordinance may be published at least twice in the municipality's official newspaper. Id. § 52.013(b).
We construe a city charter provision according to the rules governing the interpretation of statutes generally. Rossano v. Townsend , 9 S.W.3d 357, 363 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language, unless that construction would lead to an absurd result. Fleming Foods of Tex., Inc. v. Rylander , 6 S.W.3d 278, 284 (Tex. 1999). In construing city charters and municipal ordinances, we use the same rules as we do when construing statutes. Bd. of Adjustment of San Antonio v. Wende , 92 S.W.3d 424, 430 (Tex. 2002) ; City of Austin v. Hyde Park Baptist Church , 152 S.W.3d 162, 165-66 (Tex. App.-Austin 2004, no pet.).
The Diboll city charter states that "no ordinance imposing a penalty, fine, or forfeiture shall become effective until the caption of the ordinance, which shall summarize the purpose of the ordinance and the penalty for violating the ordinance has been published one time in the city's official newspaper." It is undisputed that at the time Appellants received their notices of infraction, ordinance 01-14 had not been published. Nevertheless, on appeal, the City argues that the city charter only requires publication of penal ordinances, and thus ordinance 01-14, which imposes a civil penalty, was not required to be published. We disagree.
The City's interpretation of the city charter as requiring that only ordinances imposing criminal penalties must be published is not supported by the plain language of the charter, which states "no ordinance imposing a penalty, fine, or forfeiture shall become effective until the caption of the ordinance ... has been published." Thus, by its plain and unambiguous language, the charter does not distinguish between criminal and civil penalties. Ordinance 01-14 states, "the owner of a motor vehicle is liable for a civil penalty of $75." Thus, the City's urged interpretation of its charter is not supported by the principles of statutory construction; ordinance 01-14 imposes a penalty, and the city charter requires ordinances imposing penalties be published. See Rylander , 6 S.W.3d at 284. It is not absurd that a city charter would require all ordinances imposing a penalty, civil or criminal, to be published. See ids="11644592" index="56" url="https://cite.case.law/sw3d/6/278/#p284">id.
Moreover, the City and its officials cite to several cases to support their interpretation of the charter, but we conclude that those cases do not support their position.[3]
*423 In one such case, City of Wichita Falls v. Streetman , the court held that because Wichita Falls' city charter provided that every ordinance prescribing a penalty for its violation must be published in the official newspaper of the city, the failure to publish such notice rendered the ordinance void. 607 S.W.2d 644, 647-48 (Tex. Civ. App.-Fort Worth 1980, no writ).[4] In its analysis, the Streetman court referenced a general rule that criminal ordinances must but published, however, it further stated that it must look to the city charter to determine its requirements for publication. Id. The court noted that the charter provided that "every ordinance prescribing a penalty for violation thereof shall upon passage be published at least one time ..." and held that the charter provisions requiring publication are mandatory and must be complied with for an ordinance to be effective. Id. Thus, the Streetman court relied on the wording of the charter provision in upholding the trial court's finding that the complained of ordinance was void. Id.
Here, as previously stated, the city charter's plain language requires publication of ordinance 01-14, because it imposes a $75 penalty. See Rylander , 6 S.W.3d at 284, see also Wende , 92 S.W.3d at 430 ; Hyde Park Baptist Church , 152 S.W.3d at 165-66. Thus, we reject the City's argument that ordinance 01-14 did not require publication.
The City further argues that ordinance 01-14 did not require publication, because it merely amended ordinance 06-07; thus, the City maintains that ordinance 06-07, although not published, was cured by the validation statute found in the Texas Local Government Code. The applicable provision of the local government code states that a governmental act or proceeding of a municipality is conclusively presumed, as of the date it occurred, to be valid and to have occurred in accordance with all applicable statutes and ordinances if (1) the third anniversary of the effective date of the act or proceeding has expired, and (2) a lawsuit to annul or invalidate the act or proceeding has not been filed on or before that third anniversary. TEX. LOCAL GOV'T CODE ANN. § 51.003(a)(1)-(2) (West 2008). Appellants argue that the validation statute cannot cure ordinance 06-07, because it was void at the time it occurred. See id. § 51.003(b)(1) (stating that this section does not apply to an act or proceeding that was void at the time it occurred).
We need not decide whether ordinance 06-07 was cured by the validation statute, because we reject the argument that ordinance 01-14 amended ordinance 06-07. Ordinance 01-14 provides for a civil penalty instead of a criminal penalty, outlines different procedures for contesting liability, delineates a number of affirmative defenses, and indicates the procedure for appeal. In short, ordinance 01-14 is a complete ordinance, and while 01-14 states that it takes precedence over prior ordinances, it makes no specific mention of amending ordinance 06-07. Thus, the City of Diboll's charter required that ordinance 01-14 be published prior to becoming effective. See Rylander , 6 S.W.3d at 284, see also Wende , 92 S.W.3d at 430 ; Hyde Park Baptist Church , 152 S.W.3d at 165-66.
*424 The City also argues that it was not required to publish ordinance 01-14 because it did not prohibit conduct that was otherwise illegal. However, the City cites no authority, nor are we aware of any authority, that would allow the City to disregard its own charter provisions in such an instance. See TEX. R. APP. P. 38.1(i) (a "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"), 38.2(a).
Alternatively, the City argues that the administrative remedies set forth in Chapter 707 are self-operative and do not require an ordinance to give them force and effect. Again, the City cites no authority for this argument. See TEX. R. APP. P. 38.1(i), 38.2(a). Moreover, Chapter 707 allows the City to implement a red light traffic program by ordinance and sets forth the requirements and procedures for doing so. See TEX. TRANSP. CODE ANN. §§ 707.001 - 707.019 ; see also Edwards , 343 S.W.3d at 222-23 ; Garcia , 523 S.W.3d at 742. Accordingly, we reject the City's contention that Chapter 707's administrative remedies are self-operative.
Because ordinance 01-14 was not effective at the time Appellants were assessed the red light penalties, we conclude that Appellants were not required to exhaust their administrative remedies with respect to ordinance 01-14 prior to seeking judicial relief. See Streetman , 607 S.W.2d at 647-48.
Standing and Class Actions
On appeal, the City and its officials contend that, to the extent Appellants seek prospective relief, their claims became moot by the publication of ordinance 01-14 in November 2016. Further, the City argues that Hunt's failure to pay the $75 penalty negates his standing to assert a claim for reimbursement or a takings claim. Appellants respond that the publication of ordinance 01-14 does not render their claims moot, as there is still a justiciable controversy, and that Hunt has standing to bring claims on behalf of the putative class.
Standing is a constitutional prerequisite to suit. Heckman v. Williamson Cty. , 369 S.W.3d 137, 150 (Tex. 2012). A court has no jurisdiction over a claim by a plaintiff who lacks standing to assert it. Id. Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it. Id. Similarly, if the plaintiff lacks standing to bring any of his claims, the court must dismiss the entire action for want of jurisdiction. Id. at 150-51. Standing requirements extend to class actions. Id. A plaintiff who brings a class action, rather than only suing on his own behalf, must still prove that he individually has standing to sue. Id. The court must consider this threshold question even before reaching the separate issue of whether it can certify the putative class. Id. Just as it must dismiss a case where the plaintiff lacks standing to bring any of his claims, a court must dismiss a class action for want of jurisdiction if the named plaintiff entirely lacked individual standing at the time he sued. Id.
In Heckman , the Texas Supreme Court considered whether a plaintiff, seeking to represent a class, who lacks standing on some of the purported class's claims completely lacks standing to bring any claims. Id. at 151. The court held that a plaintiff need not have standing on all the claims of the purported class in order to seek class certification. Id. at 152.
Whether considering the standing of one plaintiff or many, the court must analyze the standing of each individual plaintiff to bring each individual claim he or she alleges when that issue is before the *425 court. This principle flows from two sources. First, a plaintiff must demonstrate that the court has jurisdiction over (and the plaintiff has standing to bring) each of his claims; the court must dismiss those claims (and only those claims) over which it lacks jurisdiction. Second, a plaintiff must demonstrate that he, himself, has standing to present his claims; the court must dismiss a plaintiff who lacks standing. Thus, each party must establish that he has standing to bring each of the claims he himself alleges-meaning the court must assess standing plaintiff by plaintiff, claim by claim.
Id . at 152-53.
Such plaintiff-by-plaintiff analysis is required regardless of whether the suit is a putative class action. See ids="7314284" index="81" url="https://cite.case.law/sw3d/369/137/#p150">id. at 153 Plaintiffs who seek to represent a class must allege and show that they personally have been injured, not that an injury has been suffered by other, unidentified members of the class to which they belong and purport to represent. Id. Similarly, the claim-by-claim analysis is necessary to ensure that a particular plaintiff has standing to bring each of his particular claims. Id. A named plaintiff must show an individual justiciable interest in the case; "[he] cannot 'borrow' standing from the class, nor does he otherwise get a 'pass' on standing." Id. at 154. This is because the reasoning for the standing inquiry is the same regardless of the form of suit; a court that decides a claim over which it lacks jurisdiction violates the constitutional limitations on its authority, even if the claim is denied. Id. The denial of a claim on its merits is not an alternative to dismissal for want of jurisdiction merely because the end result is the same. Id. However, the fact that a suit is brought as a class action should not increase the named plaintiff's burden to establish standing by requiring him to prove standing on each and every one of the class's claims. Id. Thus, the Heckman court held that where a plaintiff seeks to represent a class, a plaintiff need not have standing on each and every one of the class's claims in order to satisfy the standing requirement. Id. "So long as an individual plaintiff has standing on some claim, he has standing to pursue class certification as to that claim." Id.
In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. Id. The plaintiff must plead facts that show a personal injury-that he, himself, suffered the injury. Id. at 155. The injury itself must be concrete and particularized, actual or imminent, and not hypothetical in nature. See ids="7314284" index="92" url="https://cite.case.law/sw3d/369/137/#p150">id. at 154. The plaintiff's injury must further be fairly traceable to the defendant's conduct. Id. The plaintiff's alleged injury must be likely to be redressed by the requested relief and the plaintiff must demonstrate standing separately for each form of relief sought. Id.
Here, the undisputed evidence is that Hunt never paid the $75 red light penalty assessed by Diboll. Thus, he does not have standing to either seek reimbursement of the red light penalty or bring a takings claim. See ids="7314284" index="95" url="https://cite.case.law/sw3d/369/137/#p150">id. at 154-55 However, this would not preclude Hunt from bringing an action on behalf of a putative class, because, as discussed below, he has demonstrated standing to bring an action for a declaratory judgment regarding ordinance 01-14. See ids="7314284" index="96" url="https://cite.case.law/sw3d/369/137/#p150">id. at 154-55. The civil practice and remedies code provides, in pertinent part, that a person whose rights, status, or other legal relations are affected by a municipal ordinance may have determined any question of construction or validity arising under the ordinance and obtain a declaration of rights, status, *426 or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2015). "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." Id. § 37.011 (West 2015). The undisputed evidence indicates that Hunt failed to pay the $75 penalty; thereafter, the City sent him a demand letter for payment of $125 and placed a registration hold on his vehicle. Thus, Hunt has demonstrated a concrete, personal injury traceable to the City which can be remediated by the trial court in the form of a declaratory judgment or injunction. See Heckman , 369 S.W.3d at 154-55 ; see also TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.004(a), 37.011.
Mootness
We are not persuaded by the City's argument that the publication of ordinance 01-14 in November 2016, after the assessment of penalties against Appellants, rendered Appellants' claims moot. Appellants' challenge to ordinance 01-14 is not limited to the City's failure to publish it. Rather, Appellants' live pleadings also challenge the validity of ordinance 01-14 on grounds that the City failed to complete a traffic engineering study or report the results to a citizens' advisory committee. Additionally, publication of ordinance 01-14 does not moot Appellants' claims against the City for the red light penalties they were assessed prior to the City's publication of ordinance 01-14. See Lowenberg v. City of Dallas , 261 S.W.3d 54, 59 (Tex. 2008) (declaratory judgment claim not moot by repeal of unlawful fee; for those who paid, controversy remains real). For the reasons stated above, we reject the City's mootness argument.
In conclusion, the trial court did not err in granting the City's plea to the jurisdiction with respect to Hunt's claim for reimbursement ancillary to his challenge to ordinance 01-14, and his takings claim because the undisputed evidence indicates he did not pay the $75 penalty. See Miranda, 133 S.W.3d at 226 (if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend); see also Heckman , 369 S.W.3d at 154. Nevertheless, we conclude that this does not preclude Hunt from seeking certification of a class of plaintiffs, given his demonstration of standing to bring an action for declaratory judgment with respect to ordinance 01-14. See Heckman , 369 S.W.3d at 154.
Declaratory Judgment and Reimbursement Claims
Governmental immunity from suit defeats a trial court's subject matter jurisdiction. See Miranda , 133 S.W.3d at 225-26. Whether a trial court has subject matter jurisdiction is a question of law, which we review de novo. Id. at 226. Governmental immunity may be properly raised in a plea to the jurisdiction. Id.
As previously stated, the UDJA generally permits a person whose rights, status, or other legal relations are affected by a municipal ordinance, to have determined any question of construction or validity arising under the ordinance and to obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). While the UDJA waives sovereign immunity for certain claims, it is not a general waiver of sovereign immunity. See id. § 37.006(b) (West 2015); City of El Paso v. Heinrich , 284 S.W.3d 366, 373 n.6 (Tex. 2009) (noting that the UDJA waives immunity for claims challenging the validity of ordinances or statutes); Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855-56 (Tex. 2002). Therefore, when a governmental entity is a necessary party to a statutory cause of action, such as an action *427 under the UDJA for interpretation of a statute, sovereign immunity is expressly waived. See City of La Porte v. Barfield, 898 S.W.2d 288, 297 (Tex. 1995), superseded by statute on other grounds as stated in Travis Cent. Appraisal Dist. v. Norman, 342 S.W.3d 54 (Tex. 2011) ; see also Tex. Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d 628, 634 (Tex. 2010) (noting that because UDJA permits statutory challenges and governmental entities may be bound by those challenges, the Act contemplates that the entities must be joined in those suits). The UDJA allows courts to declare relief-i.e., construe statutes-whether or not further relief is or could be claimed. Tex. Lottery Comm'n , 325 S.W.3d at 635.
In this case, Appellants challenge the validity of ordinance 01-14 because (1) at the time they received their infraction notices, the ordinance was not published as required by Diboll's city charter, and (2) the City of Diboll did not comply with the requirements of Chapter 707 prior to the installation and enforcement of the red light cameras. Further, they seek a declaration that they are not liable for the penalties assessed against them.
Because the UDJA grants a litigant whose rights are affected by an ordinance the opportunity to obtain a declaration of those rights under the ordinance and requires that all relevant parties be joined in any declaratory judgment suit, the City of Diboll's immunity has been waived. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.004, 37.006(a) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding[ ]"); see also Tex. Lottery Comm'n , 325 S.W.3d at 634. Thus, Appellants' claims under the UDJA challenging the validity of ordinance 01-14 are not barred by governmental immunity. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.002 - 37.004. 37.006; see Heinrich , 284 S.W.3d at 368-69, 373 n.6 (holding that governmental immunity bars suits for retrospective money relief, but does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions; further, suits against governmental entities-as opposed to their officers in their official capacity-remain immune from suit unless the claim challenges the validity of an ordinance or statute).
Ancillary to their validity challenge to ordinance 01-14, Appellants seek reimbursement of the red light penalties paid. Generally, governmental immunity protects political subdivisions of the state from lawsuits for money damages unless immunity has been waived. Reata Constr. Corp. v. City of Dallas , 197 S.W.3d 371, 374 (Tex. 2006). However, claims for a refund differ from claims for money damages because due process requires that persons who have paid illegal or invalid taxes or fees under duress should have recourse to recover the fees. Dallas Cty. Cmty. Coll. Dist. v. Bolton , 185 S.W.3d 868, 882 n. 9 (Tex. 2005) ; Kubosh v. Harris Cty. , 416 S.W.3d 483, 487 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) ; but c.f. Garcia , 523 S.W.3d at 743 (holding that immunity barred claims against city by appellants who alleged payment of unlawful red light penalties). "Reimbursement of illegal fees and taxes is allowed, in essence, when the public entity compels compliance with a void law and subjects the person to punishment if he refuses or fails to comply." Bolton , 185 S.W.3d at 877. These rules have been applied to both the imposition of illegal fees and illegal taxes, with courts holding that a party may seek reimbursement of illegal license fees paid under *428 duress. Id. (citing State v. Akin Prods. Co. , 155 Tex. 348, 351, 286 S.W.2d 110, 111-12 (1956) ; In re FirstMerit Bank, N.A. , 52 S.W.3d 749, 758 (Tex. 2001) ). But, a person who pays an unlawful fee voluntarily has no legal claim for repayment. Bolton , 185 S.W.3d at 876. The voluntary payment rule protects the government from threats to financial security that can arise from unpredictable revenue shortfalls and supports the policy of discouraging litigation with the government. See ids="8985307" index="125" url="https://cite.case.law/sw3d/185/868/">id. at 877.
As discussed above, Hunt's pleadings indicate he did not pay the red light penalty. Thus, the trial court did not err by granting the City's plea to the jurisdiction with respect to Hunt's claim for reimbursement. However, it is undisputed that ADE paid the $75 penalty after it received the notice of infraction. ADE pleaded that it paid the penalty under duress because the notice stated that failure to pay the penalty could result in the loss of the right to renew its vehicle registration, which would expose it to constant tickets resulting in substantial fines and possible confiscation of the vehicle. ADE further pleaded that the possibility of being sued by the City coerced its payment. On appeal, the City argues that ADE did not pay the penalty under duress because ADE did not protest the penalty.
Historically, duress has been characterized as the result of threats which render persons incapable of exercising their free agency and which destroy the power to withhold consent. Id. at 877 (citing Dimmitt v. Robbins , 74 Tex. 441, 447, 12 S.W. 94, 96-97 (1889) ). However, the concept has been expanded to encompass business compulsion or economic duress, which has been characterized as implied duress because the pressure to pay the fee or tax is indirect and flows from statutes or ordinances. See Bolton , 185 S.W.3d at 877. Fees or taxes have been held to be paid under implied duress when the choice becomes paying the illegal fee or tax and forfeiting one's livelihood, property, or right to do business. See Crow v. City of Corpus Christi , 146 Tex. 558, 209 S.W.2d 922, 924-25 (1948) (city ordinance compelling a choice between paying illegal license fee to operate a cab or cab company and forfeiting one's livelihood or right to do business constituted business compulsion); see also State v. Akin Prods. Co. , 155 Tex. at 351, 286 S.W.2d 110 (1956) (taxes on packaged fruits were paid under duress where a business owner would have been subject to daily penalty with interest if taxes not paid); Nat'l Biscuit Co. (Nabisco) v. State , 134 Tex. 293, 304, 135 S.W.2d 687, 693 (1940) (company paid franchise and permit fees for several years in lieu of a penalty of twenty-five percent of the fees and a forfeit of its right to do business in Texas held to be duress); Highland Church of Christ v. Powell , 640 S.W.2d 235, 237 (Tex. 1982) (church's payment of a judgment for ad valorem taxes on office building it owned was made under duress to avoid penalties and interest which would accrue while the case was on appeal).
The question before this Court, however, is not whether ADE made the payment to the City under duress, but whether ADE pleaded sufficient facts to confer jurisdiction upon the district court. See Miranda, 133 S.W.3d at 226 ; see also Blue , 34 S.W.3d at 554. In deciding this issue, we are obligated to construe the plaintiff's pleadings liberally in the plaintiff's favor and look to the pleader's intent. Miranda , 133 S.W.3d at 226. Further, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. Id. at 228. In this case, based on ADE's pleadings as detailed above, we conclude that ADE pleaded sufficient *429 facts to confer jurisdiction upon the trial court regarding its claim for reimbursement. See ids="9256802" index="141" url="https://cite.case.law/sw3d/133/217/#p226">id. Thus, the trial court erred in granting the City's plea to the jurisdiction with respect to ADE's reimbursement claim.
ADE's Takings Claim
Having concluded that ordinance 01-14 was not effective at the time ADE received its notice of infraction and paid its penalty, we must now analyze whether the trial court erred in dismissing ADE's takings claim. The City argued that the trial court lacked jurisdiction over ADE's takings claim because ADE's pleadings allege that the taking occurred pursuant to unlawful or unauthorized authority. In their plea to the jurisdiction, the City cited to Steele v. City of Houston to support the argument that ADE's pleadings affirmatively negated a takings claim. 603 S.W.2d 786 (Tex. 1980). On appeal, the City and its officials assert that ADE was obligated to exhaust its administrative remedies prior to bringing any of its claims.[5]
Article 1, Section 17 of the Texas Constitution, known as the "takings clause," provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person ..." TEX. CONST. art. I, § 17. Immunity will not shield the government from a claim under the takings clause. See State v. Holland , 221 S.W.3d 639, 643 (Tex. 2007) (citing Gen. Servs. Comm'n v. Little-Tex Insulation Co. , 39 S.W.3d 591, 598 (Tex. 2001) ). To establish a takings claim, a claimant must show that a governmental actor intentionally took or damaged property for public use. Holland , 221 S.W.3d at 643 ; Little-Tex Insulation Co. , 39 S.W.3d at 598.
ADE's pleadings assert that its money was taken by the City for public use towards traffic safety programs. They further assert that the taking was wrongful because it was pursuant to an unconstitutional ordinance (06-07) or, alternatively, pursuant to ordinance 01-14 which had not been published at the time it was assessed the penalty. It further alternatively pleaded that its money was taken unlawfully because the City did not comply with Chapter 707's requirements to conduct an engineering study, appoint a citizen's advisory committee, and report the results to the committee prior to the installation and operation of the red light camera.
In Steele , the plaintiffs brought a takings claim against the City of Houston for destruction of their home caused by Houston police officers attempting to recapture three escaped prisoners who had taken refuge in the plaintiff's home. 603 S.W.2d at 788. Steele recognized precedent that a takings claim cannot be the result of negligence or other tortious conduct of a government officer, but must result from the state intentionally performing certain acts in the exercise of lawful authority. Id. at 791. Here, ADE has not pleaded negligence or tortious action on the part of the City or its officials, but instead challenges the validity of the ordinance upon which the penalties were based. Thus, ADE's pleadings do not affirmatively negate jurisdiction. See Miranda, 133 S.W.3d at 228.
Rather, ADE alleges that the City of Diboll and its officials took its money for public use by enforcing an ordinance, a function that municipalities are lawfully authorized to perform. See TEX. LOC. GOV'T. CODE ANN. § 54.001 (West Supp. 2016). In alleging jurisdictional facts, ADE was not *430 required to put on its case. See Blue , 34 S.W.3d at 554. Accordingly, we conclude that ADE pleaded sufficient facts to confer jurisdiction upon the trial court for a takings claim. See Miranda, 133 S.W.3d at 226. For this reason, the trial court erred in granting the City's plea to the jurisdiction with regard to ADE's takings claim.
Ultra Vires Claims
Appellants alternatively pleaded claims that the City's officials acted ultra vires by installing red light cameras and assessing and collecting red light penalties.
In order for a claim to fall within the ultra vires exception to governmental immunity, a plaintiff must not complain of acts within the government official's discretion, but rather must allege, and ultimately prove, that the government official acted without legal authority or failed to perform a purely ministerial act. Heinrich , 284 S.W.3d at 372. Appellants' ultra vires allegations are, as stated in their brief, based upon "Diboll's city officials assessing and collecting red light camera penalties without a valid ordinance in effect allowing them to do so." Appellants do not allege any acts by Baker, McClain, or Boren that were without legal authority. Thus, the substance of the allegations against the City officials is that the ordinance under which they installed red light cameras and collected red light penalties was invalid, not that the individual officials sued committed any act outside their lawful authority. See ids="7301546" index="153" url="https://cite.case.law/sw3d/284/366/">id. Accordingly, Appellants' claims do not fall within the ultra vires exception to governmental immunity. See ids="7301546" index="154" url="https://cite.case.law/sw3d/284/366/">id. ; see also Tex. A & M Univ., Mark Hussey, Ph.D. v. Starks, 500 S.W.3d 560, 571 (Tex. App.-Waco 2016, no pet.) (appropriate defendants in an ultra vires action are those officials whose acts or omissions allegedly violated the plaintiff's rights; where plaintiff did not allege in his petition that the official he sued was involved in any of the alleged unconstitutional retaliatory conduct against him, he did not assert a valid ultra vires claim).
Furthermore, the only available remedy in an ultra vires suit is prospective, as measured from the date of an injunction. Heinrich , 284 S.W.3d at 376. Here, the pleadings seek reimbursement of penalties paid in the past, a remedy which would not be available in an ultra vires suit. See ids="7301546" index="157" url="https://cite.case.law/sw3d/284/366/">id. Thus, we conclude that the trial court did not err in granting the City's plea to the jurisdiction on Hunt and ADE's ultra vires claims for relief.
Opportunity to Amend
Generally, if a plaintiff fails to plead sufficient facts affirmatively demonstrating the trial court's jurisdiction, but the pleadings do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. Miranda , 133 S.W.3d 217 at 226-27. However, through inaction, a plaintiff may lose the opportunity to amend. See Haddix , 253 S.W.3d at 347 ; see also Tara Partners Ltd. , 282 S.W.3d at 570. Appellants never requested an opportunity to amend their pleadings after the trial court granted the City's plea to the jurisdiction. Thus, Appellants have forfeited the opportunity to amend their pleadings while this case was pending in the trial court. See Haddix , 253 S.W.3d at 347 ; Tara Partners Ltd. , 282 S.W.3d at 578.
Conclusion
Having determined that the trial court properly granted the City's plea to the jurisdiction regarding Appellants' claims for declaratory and injunctive relief as to ordinance 06-07, Hunt's reimbursement and takings claims against the City, and Appellants' ultra vires claims against the *431 City officials, we overrule Appellants' first issue in part. We sustain issue one regarding Appellants' claims for declaratory and injunctive relief as to ordinance 01-14 and ADE's claim for reimbursement and its takings claim.
ATS'S PLEA TO THE JURISDICTION
In Appellants' second issue, they argue that the trial court erred when it granted ATS's plea to the jurisdiction. ATS's plea to the jurisdiction argued that (1) Appellants failed to plead consumer status with respect to their DTPA claims against ATS; (2) ADE is a foreign corporation not registered to do business in Texas and lacks standing to bring its claims; (3) Hunt lacks standing because he failed to pay the red light penalty and exhaust his administrative remedies; and (4) there is no causal connection between Hunt's alleged injuries and ATS's conduct. Appellants argue that the trial court erred in granting ATS's plea to the jurisdiction because (1) Hunt suffered a particularized injury despite not paying the red light penalty; (2) ADE's status as a foreign corporation goes to the issue of capacity not jurisdiction; and (3) Appellants qualify as consumers under the DTPA. On appeal, ATS asserts an additional argument that ADE failed to plead a causal connection between ADE's injuries and ATS's conduct.
DTPA Claims
The elements of a DTPA claim are (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. Amstadt v. U.S. Brass Corp. , 919 S.W.2d 644, 649 (Tex. 1996) ; see Doe v. Boys Clubs of Greater Dallas, Inc. , 907 S.W.2d 472, 478 (Tex. 1995). Accordingly, to maintain a DTPA cause of action, a party must qualify as a consumer. See TEX. BUS. & COMM. CODE ANN. § 17.50(a) (West 2011). Relevant to this case, a "consumer" is an individual or corporation who seeks or acquires by purchase or lease, any goods or services. Id. § 17.45(4) (West 2011).
Although Appellants argue that they alleged consumer status in their pleadings, their brief also contains a footnote asserting that their claim is based on section 1702.3835 of the occupations code, which is a tie-in statute and, consequently, they need not prove consumer status. They further incorporate by reference all the authorities on this point that they presented to the trial court. ATS contends that this argument has been waived because a party cannot incorporate by reference its arguments at the trial level and must argue each claim of error on appeal. We need not decide whether Appellants have waived their argument because we conclude that a plaintiff must establish consumer status to bring a claim under section 17.50(h) of the DTPA, which addresses tie-in statutes. See Cushman v. GC Servs., L.P. , 397 Fed.Appx. 24, 27-28 (5th Cir. 2010) (not published); see also Deubler v. Bank of New York Mellon , 07-13-00221-CV, 2015 WL 3750312, at *6 (Tex. App.-Amarillo June 15, 2015, pet. denied) (mem. op.); Dodeka, L.L.C. v. Garcia , 04-11-00016-CV, 2011 WL 4825893, at *2 (Tex. App.-San Antonio Oct. 12, 2011, no pet.) (mem. op.); Hansberger v. EMC Mortg. Corp. , 04-08-00438-CV, 2009 WL 2264996, at *2 (Tex. App.-San Antonio July 29, 2009, pet. denied) (mem. op.); see also TEX. BUS. & COM. CODE ANN. § 17.50(h) (West Supp. 2016).
Some statutes, known as "tie-in" statutes, are actionable under the DTPA. See id. §§ 17.43, 17.50(h) ; see also *432 Cruz v. Andrews Restoration, Inc. , 364 S.W.3d 817, 822 (Tex. 2012). This includes section 1702.3835 of the occupations code. See TEX. OCC. CODE ANN. § 1702.3835 (West 2012). "The Texas Supreme Court has consistently held that '[o]nly a "consumer" can maintain a cause of action directly under the DTPA' ... [a]lthough the text of section 17.50(h) distinguishes the type of damages that DTPA plaintiffs bringing claims through 'tie-in' statutes may recover, it does not exempt those claimants from proving consumer status." Cushman , 397 Fed.Appx. at 27-28 ; see Deubler , 2015 WL 3750312, at *6 (plaintiff proceeding under tie-in statute must still qualify as a consumer).
A plaintiff's status as a consumer under the DTPA is not dependent on privity with the defendant. Serv. Corp. Int'l v. Aragon , 268 S.W.3d 112, 117 (Tex. App.-Eastland 2008, pet. denied) ; Sparks v. Booth , 232 S.W.3d 853, 864 (Tex. App.-Dallas 2007, no pet.). In other words, the plaintiff need not have sought or acquired goods or services from the defendant; what is required is (1) that the plaintiff have sought or acquired goods or services for purchase or lease, and (2) that those goods or services form the basis of the complaint. Cameron v. Terrell & Garrett, Inc. , 618 S.W.2d 535, 539-541 (Tex. 1981) ; Basic Energy Serv. v. D-S-B Properties , 367 S.W.3d 254, 270 (Tex. App.-Tyler 2011, no pet.). If either requirement is not satisfied, the person aggrieved by the deceptive act or practice must rely on the common law or some other statutory provision for redress. Roof Sys., Inc. v. Johns Manville Corp. , 130 S.W.3d 430, 440 (Tex. App.-Houston [14th Dist.] 2004, no pet.)
Appellants argue that they need not actually purchase or lease any goods or services to qualify as consumers. They cite to Basic Energy Service and argue they have established consumer status because (1) a representation by ATS reached them, and (2) ATS received a benefit from the transaction. This reliance is misplaced. In Basic Energy Service , we noted that, although privity of contract with the defendant is not required for a plaintiff to be a consumer under the DTPA, the plaintiff must show the defendant was connected with the transaction through (1) a representation by the defendant that reached the plaintiff, or (2) a benefit from the plaintiff's transaction that reached the defendant. 367 S.W.3d at 270. We held that the royalty owner of an oil well lacked standing as a consumer to bring suit against a contractor under the DTPA based on a transaction between the contractor and the operator because the operator's contractual obligation to maintain the well was only to the working interest owners. Id. at 271. Further, there was no evidence that the operator entered the transaction with the intention of benefitting the royalty owners. Id . We concluded that any benefit to the royalty owners was incidental and thus, they were not sufficiently connected with the transaction to be consumers under the DTPA. Id. at 272.
Thus, while a plaintiff does not have to be a direct purchaser to establish consumer status, he must establish a relationship to the transaction. See Kennedy v. Sale , 689 S.W.2d 890, 892-93 (Tex. 1985) (employee who was covered by a group insurance policy purchased by employer was entitled to maintain DTPA action); Brandon v. Am. Sterilizer Co. , 880 S.W.2d 488, 492 (Tex. App.-Austin 1994, no writ) (hospital employee not a consumer under DTPA with regard to sterilizers purchased by hospital since hospital's purpose for purchasing the sterilizers was for use in everyday course of business and not for employee's benefit). In this case, Appellants' pleadings allege that the City of Diboll contracted with ATS to assist in *433 administering and enforcing Diboll's red light camera system. They also allege that ATS is acting as an "investigations company" as defined by the Texas Occupations Code, but that ATS did not have the license required to act as an investigations company. See TEX. OCC. CODE ANN. §§ 1702.002(10), 1702.101, 1702.104 (West 2012 and West Supp. 2016). Appellants' assert that their DTPA claim is brought pursuant to section 1702.3835 of the occupations code, which states that "a person who performs or offers to perform an activity regulated under this chapter, but who is not licensed or otherwise authorized under this chapter to perform the activity, commits, a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code." Id. § 1702.3835 (a) ; see also TEX. BUS. & COM. CODE ANN. § 17.46 (West Supp. 2016). Appellants' complain that "as registered vehicle owners, [they] are the direct targets and intended recipients of the misrepresentations in the Notice of Infractions sent by ATS," which in turned caused them damages.
However, in a DTPA claim, our focus is on Appellants' relationship to the transaction between the City and ATS. See Basic Energy Serv. , 367 S.W.3d at 270. While privity of contract between the plaintiff and defendant is not required, the goods or services sought or acquired by the consumer must form the basis of the complaint. Kennedy , 689 S.W.2d at 893. The transaction was between the City of Diboll and ATS for goods and services, specifically, a "turnkey solution" for Diboll's red light camera system. Appellants have not established that they sought or acquired any goods or services from ATS, nor have they established that they were the intended beneficiaries of the transaction. See Basic Energy Serv , 367 S.W.3d at 272.
In fact, they have not established any relationship to the transaction at all. ATS's role with respect to the red light cameras is a result of its contract with the City. That ATS may benefit from that transaction does not establish a relationship between Appellants and the City's transaction with ATS. Moreover, that Appellants might incidentally be damaged by representations of ATS does not give them consumer status under the DTPA. See Vinson & Elkins v. Moran , 946 S.W.2d 381, 408 (Tex. App.-Houston [14th Dist.] 1997, writ dism'd) (beneficiaries of a will or trust may incidentally benefit or be damaged by the attorney hired to represent the executor, but this does not give them consumer status under the DTPA). "[T]he defendant's deceptive trade act or practice is not actionable under the DTPA unless it was committed in connection with the plaintiff's transaction in goods or services." Amstadt , 919 S.W.2d at 650.
We conclude that Appellants' pleadings simply do not establish the type of connection between themselves and the City's transaction with ADE that is required to maintain a DTPA cause of action. See Basic Energy Serv. , 367 S.W.3d at 272 ; Kennedy , 689 S.W.2d at 892-93 ; Brandon , 880 S.W.2d at 492. Thus, Appellants have not pleaded a cognizable DTPA claim because they have not established that they were consumers. See, e.g., Cushman , 397 Fed.Appx. at 27-28 ; see also Basic Energy Serv. , 367 S.W.3d at 272 ; Kennedy , 689 S.W.2d at 892-93 ; Brandon , 880 S.W.2d at 492. For this reason, the trial court did not err in granting ATS's plea to the jurisdiction with respect to Appellants' DTPA claims.
Fraud Claims
ATS asserts that Appellants lack standing to pursue their fraud claims because Hunt suffered no injury, and neither Hunt nor ADE pleaded any causal connection *434 between any injury suffered and the conduct of ATS.[6] The elements of fraud are that (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury. Eagle Prop., Ltd. v. Scharbauer , 807 S.W.2d 714, 723 (Tex. 1990).
ATS argues that Hunt suffered no injury because he did not pay the $75 penalty assessed. However, we previously determined that Hunt suffered a concrete, personalized injury based upon the undisputed evidence that the City's attorney sent him a demand letter for payment of $125 and placed a registration hold on his vehicle. See Heckman , 369 S.W.3d at 154. Nevertheless, Hunt's pleadings do not demonstrate that Hunt relied on any of the alleged misrepresentations by ATS. In fact, Hunt's pleadings indicate that he disregarded the alleged misrepresentations in the notice, and instead, refused to pay the penalty and sent a letter to the City demanding a jury trial and other constitutional protections afforded to him in a criminal case. Thus, Hunt has not pleaded sufficient jurisdictional facts to establish a common law fraud claim against ATS and the trial court did not err in granting ATS' plea to the jurisdiction as to Hunt's fraud claim against ATS. See ids="7314284" index="199" url="https://cite.case.law/sw3d/369/137/#p150">id. ; see also Galindo v. Snoddy , 415 S.W.3d 905, 909-10 (Tex. App.-Texarkana 2013, no pet.) (fraud does not occur until plaintiff has acted in reliance upon false representations).
ADE, on the other hand, received the notice and promptly paid the $75 penalty to the City of Diboll. We reject ATS's argument that ADE's pleadings are insufficient to demonstrate the causal connection required for a fraud claim. ADE alleged in its petition that ATS contracted with the City of Diboll for the installation and administration of the City's red light camera system. According to the pleadings, ATS knew or should have known that the City had no valid ordinance authorizing the imposition of a civil penalty for the running of a red light because the ordinance was not published and did not comply with Chapter 707 of the transportation code. Further, ordinance 06-07 was listed on the notices and provided for a criminal penalty. ADE also alleges that the representations concerning their rights and the procedures for contesting the red light penalty were false and misleading because the City had no valid red light ordinance, and that they relied upon these false misrepresentations to their detriment by paying the penalty.
Taking as true all evidence favorable to ADE and indulging every reasonable inference and resolving any doubts in their favor, we conclude that ADE pleaded sufficient facts to establish a connection between ATS's conduct and the alleged injury. ADE was not required to "put on [their] case" simply to establish jurisdiction. See Blue, 34 S.W.3d at 554. Thus, ADE has established standing to bring a fraud claim against ATS. Miranda , 133 S.W.3d at 228 ; Scharbauer , 807 S.W.2d at 723.
*435 ADE's Foreign Corporation Status
ATS argues that ADE lacks standing to bring its fraud action because it failed to register to transact business in Texas as required by the business organizations code. See TEX. BUS. ORG. CODE ANN. § 9.051(West 2012). Section 9.051 of the business organizations code states that "a foreign filing entity may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter." Id. § 9.051(b). ATS contends that the failure to register to do business in Texas applies as a bar to standing.
A plaintiff must have both standing and capacity to bring a lawsuit. Austin Nursing Ctr., Inc. v. Lovato , 171 S.W.3d 845, 848 (Tex. 2005). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in the outcome, whereas the issue of capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.' " Id. "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." Id.
Standing requires there be a real controversy between the parties that will actually be determined by the judicial declaration sought. Id. Without standing, a court lacks subject matter jurisdiction to hear the case; the issue of standing may be raised for the first time on appeal. Id. In addition to standing, a plaintiff must have the capacity to pursue a claim. Id. Unlike standing, which may be raised at any time, a challenge to a party's capacity must be raised by a verified pleading in the trial court. Id. ; TEX. R. CIV. P. 93(1)-(2).
We conclude that ADE's failure to register to transact business goes to ADE's capacity to maintain suit, as it raises the question not of whether ADE has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in the outcome, but whether ADE has legal authority to act. See Lovato , 171 S.W.3d at 848 ; see also Duradril, L.L.C. v. Dynomax Drilling Tools, Inc ., 516 S.W.3d 147, 156-57 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (discussing complaint regarding plaintiff's failure to register to do business in Texas as an issue of capacity to maintain suit and holding that appellants waived the complaint by not filing a verified plea in abatement). Furthermore, a challenge to a plaintiff's right to maintain suit in the capacity in which he sues is properly raised by a verified motion to abate or plea in abatement, or else it is waived. Id. at 157 (citing Cognata v. Down Hole Injection, Inc. , 375 S.W.3d 370, 376 (Tex. App.-Houston [14th Dist.] 2012, pet. denied) ). This rule favors abatement over dismissal because abatement affords corporations an opportunity to cure the defect. Duradril, L.L.C. , 516 S.W.3d at 157 ; Cognata , 375 S.W.3d at 376. Texas courts have held that arguing lack of capacity in an answer, plea to the jurisdiction, motion for summary judgment, or motion to dismiss does not properly raise the issue. See, e.g. , Duradril, L.L.C. , 516 S.W.3d at 157 ; Haddox v. Fed. Nat'l Mortg. Ass'n , No. 03-15-00350-CV, 2016 WL 2659695, at *4 (Tex. App.-Austin May 6, 2016, pet. dism'd) (mem. op.); Lighthouse Church of Cloverleaf v. Tex. Bank ' 889 S.W.2d 595, 600 (Tex. App.-Houston [14th Dist.] 1994, writ denied) ; Cont'l Contractors, Inc. v. Thorup , 578 S.W.2d 864, 866 (Tex. Civ. App.-Houston [1st Dist.] 1979, no writ).
*436 The record reflects that ATS raised the issue of ADE's failure to register in an answer and a plea to the jurisdiction. The appropriate procedural device to challenge ADE's capacity to maintain suit would have been through a verified motion to abate or a verified plea in abatement. See Duradril, L.L.C. , 516 S.W.3d at 157 ; see also Cognata , 375 S.W.3d at 376. By failing to file a verified motion to abate or plea in abatement, ATS has waived its complaint regarding ADE's capacity to sue. See, e.g. , Duradril, L.L.C. , 516 S.W.3d at 157 ; Haddox , 2016 WL 2659695, at *4 ; Lighthouse Church of Cloverleaf ' 889 S.W.2d at 600 ; Thorup , 578 S.W.2d at 866 (Tex. Civ. App.-Houston [1st Dist.] 1979, no writ). Having determined that Appellants pleaded sufficient facts to establish standing to maintain a fraud claim against ATS, we conclude that the trial court erred in granting ATS's plea to the jurisdiction as to Appellants' fraud claims against ATS. Thus, we sustain Appellants' second issue in part.
FAILURE TO GRANT SUMMARY JUDGMENT
In their third issue, Appellants argue that the trial court's order granting the City's and ATS's pleas to the jurisdiction "effectively" denied Hunt and ADE's motion for summary judgment. On appeal, they urge this Court to review this implicit denial of summary judgment. However, the trial court did not enter a written, signed judgment denying Appellants' summary judgment; thus, there is no final, appealable decision for us to review. See TEX. R. APP. P. 26.1 ; see also, e.g. , Grant v. Am. Nat'l Ins. , 808 S.W.2d 181, 184 (Tex. App.-Houston [14th Dist.] 1991, no writ). Accordingly, we overrule Appellants' third issue.
CONCLUSION
We have overruled Appellants' first and second issues, in part, with regard to the trial court's dismissal of their claims for declaratory and injunctive relief as to ordinance 06-07, Hunt's reimbursement and takings claims against the City of Diboll, Appellants' ultra vires claims against the City officials, Appellants' DTPA claims against ATS, and Hunt's fraud claim against ATS. Having sustained Appellants' first and second issues in part, we reverse the trial court's order granting the City's plea to the jurisdiction with regard to (1) Appellants' claims for declaratory and injunctive relief as to ordinance 01-14, (2) ADE's claim for reimbursement and its takings claim, and (3) ADE's fraud claim against ATS. We remand this cause for further proceedings consistent with this opinion. We affirm the trial court's order of dismissal in all other respects.

Chapter 707 of the Texas Transportation Code authorizes local governments, by ordinance, to impose civil fines on owners of vehicles that have been photographed driving through a red light. See Tex. Transp. Code Ann. § 707.002 (West 2011). Chapter 707 outlines a pervasive regulatory scheme for cities in implementing civil fines resultant from red light violations captured by automatic safety cameras. See itation index="230" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20707.002">id. §§ 707.001-701.019 (West 2011 and West Supp. 2016); see also Edwards v. City of Tomball , 343 S.W.3d 213, 221 (Tex. App.-Houston [14th Dist.] 2011, no pet.).

The trial court's initial written order, signed on December 31, 2016, granted the City's plea to the jurisdiction and dismissed the claims against the City with prejudice. This order was in contrast to the trial court's previous letter ruling of December 27, which indicated an intent to grant both the City's and ATS's pleas to the jurisdiction, because it did not expressly identify ADE as a plaintiff and did not mention ATS's plea to the jurisdiction. Appellants filed an interlocutory appeal of the December 31 order. As a preliminary matter, Appellants argue that the trial court's January 30, 2017 order, which granted the City's and ATS's pleas to the jurisdiction and dismissed all of the Appellants' claims with prejudice is void because it was issued in violation of an automatic stay under section 51.014(b) of the Texas Civil Practice and Remedies Code. We conclude this argument is without merit, because at the time the trial court entered the January 30 order, this Court had abated Appellants' interlocutory appeal and remanded the case to the trial court for clarification of its December 31 order. See Lehmann v. Har-Con Corp. , 39 S.W.3d 191, 206 (Tex. 2001) ; see also Taylor v. Lubbock Reg'l MHMR , No. 07-12-00232-CV, 2012 WL 3136223, at *1-2 (Tex. App.-Amarillo Aug. 2, 2012, no pet.) (order) (abating appeal to obtain modified order "clearly and unequivocally" clarifying intended disposition in plea to the jurisdiction case); Mills v. Haggard , 17 S.W.3d 462, 463 (Tex. App.-Waco 2000, no pet.) ; Tex. R. App. P. 2.

The City defendants also cite other cases that we do not find persuasive. In Bexar Cty. v. City of San Antonio , the city's charter stated that every ordinance imposing any penalty, fine, or forfeiture had to be published. 352 S.W.2d 905, 909 (Tex. Civ. App.-San Antonio 1961, writ dism'd). The court held that an ordinance allowing the city to shut off a delinquent water user's connection was not penal and therefore did not require publication. Id. In Tex. Traction Co. v. Scoggins , the city charter stated that all ordinances of a penal nature had to be published, and the court held that the ordinance in question, which prohibited speeding by imposing a misdemeanor conviction and fine, was penal in nature. 175 S.W. 1128, 1131-32 (Tex. Civ. App.-Dallas 1915, writ ref'd). "Penal" is defined as "of pertaining to, or prescribing punishment, as for breaking the law." Webster's II New Riverside University Dictionary 868 (1984). Thus, a penalty can be civil or criminal in nature, just as laws can be civil or criminal.

Streetman was decided in 1980, prior to the passage of Tex. S.B. 896, 70th Leg. R.S. (1987), which repealed Tex. Rev. Civ. Stat. Ann. arts. 1176b-1, b-2. S.B. 896 also enacted the Texas Local Government Code.

We need not address this argument given that we have already concluded that neither Hunt nor ADE was obligated to exhaust administrative remedies.

ATS argued in its plea to the jurisdiction, and argues in its brief, that to the extent Hunt's claims are derivative of his claims against the City of Diboll, he failed to exhaust his administrative remedies. We need not address this argument, given that we already concluded that neither Hunt nor ADE was obligated to exhaust their administrative remedies. See Tex. R. App. P. 47.1.