# IN THE SUPREME COURT OF TEXAS

No. 17-0713

LUIS GARCIA, ET AL., PETITIONERS

v.

CITY OF WILLIS, LEONARD REED, IN HIS OFFICIAL CAPACITY AS [MAYOR]
OF THE CITY OF WILLIS, JAMES NOWAK IN HIS OFFICIAL CAPACITY AS
CHIEF OF POLICE OF THE CITY OF WILLIS, HECTOR FORESTIER, IN HIS
OFFICIAL CAPACITY AS CITY MANAGER OF THE CITY OF WILLIS, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS

**Argued November 1, 2018**

JUSTICE BROWN delivered the opinion of the Court.

Underlying this case is a constitutional challenge to red-light cameras as a traffic-enforcement tool. Petitioner Luis Garcia represents a putative class of citizens that has asked a district court to strike down both the state statutes authorizing use of red-light cameras and the City of Willis' ordinance providing for the use of red-light cameras within its jurisdiction. But these questions are not at issue today. The only question before us is procedural: was Garcia required to seek an administrative remedy before filing his case in district court? The trial court answered no. The court of appeals disagreed and rendered judgment that the trial court had no jurisdiction over Garcia's claims because he had failed to seek administrative relief. We affirm the

court of appeals' judgment, but largely for different reasons. We hold that Garcia lacks standing to bring his prospective claims for declaratory and injunctive relief and that governmental immunity bars his reimbursement claim. We agree with the court of appeals, however, that Garcia was required to exhaust administrative remedies before bringing his constitutional-takings claim in district court. Based on these holdings, we do not decide whether the red-light camera statutory scheme generally requires exhaustion of administrative remedies.

## I

## Background

Luis Garcia sued the City of Willis on behalf of himself and "others similarly situated." All members of this putative class paid a civil penalty for violating a city ordinance that created a photographic traffic-signal enforcement system that penalizes red-light infractions caught on camera.[1] Garcia's suit seeks injunctive and declaratory relief holding that (1) the ordinance and its enabling state statutes[2] are unconstitutional, (2) the ordinance violates statutory requirements for local red-light camera enforcement, and (3) the city acted ultra vires in levying a fine against Garcia and the other plaintiffs.[3] Garcia further seeks a refund of the citation he paid through either a claim for reimbursement or a constitutional-takings claim. The city answered, filed a plea to the jurisdiction, and argued Garcia's claims are barred by governmental immunity, official immunity, failure to exhaust administrative remedies, res judicata, and collateral estoppel, and that exclusive jurisdiction rests in the municipal court. Garcia responded with a motion for partial summary judgment on the city's exhaustion-of-remedies defense. In it, he argued that the nature of his claims

---

[1] Willis Ordinance No. 09-0721A; Willis, Tex., Code of Ordinances ch. 70, art. VII, § 70.01–.99 (2010).

[2] TEX. TRANSP. CODE §§ 707.001–.019.

[3] *See id.* § 707.003(c) (requiring red-light camera enforcement to be implemented pursuant to a traffic-engineering study).

forecloses the need to seek administrative relief—namely, a city administrative hearing on his red-light ticket—before challenging the constitutionality of the ordinance and statutes in district court.

The trial court denied the city's jurisdictional plea, and the city took an interlocutory appeal. It then re-urged its argument that Garcia was required to exhaust administrative remedies before filing suit. 523 S.W.3d 729, 739 (Tex. App.—Beaumont 2017). Garcia responded that exhaustion is not required due to the constitutional nature of his claims and because the city acted ultra vires in collecting red-light camera fines without first conducting a statutorily required traffic-engineering study.

The court of appeals rejected Garcia's arguments, relying on *Edwards v. City of Tomball*, 343 S.W.3d 213, 221–22 (Tex. App.—Houston [14th Dist.] 2011, no pet.), in holding that Transportation Code chapter 707 directs cities to establish an "exclusive" administrative regime that claimants must exhaust before filing suit in district court. 523 S.W.3d at 742. Because Garcia did not seek relief through an administrative hearing, the court of appeals reasoned, the trial court had no jurisdiction to hear his claims. *Id.* The court of appeals further held that the ultra vires exception to the exhaustion-of-remedies requirement does not apply because the statutory requirement to conduct a traffic-engineering study was merely a "regulatory requirement" insufficient to support an ultra vires claim. *Id.* at 744. The court added that, even if the city's failure to conduct a traffic-engineering study was an ultra vires act, Garcia's ultra vires claim would nonetheless fail because he seeks retrospective relief in the form of a refund. *Id.* at 745 n.7.

The court of appeals further held that Garcia's reimbursement claim is barred by governmental immunity—notwithstanding that it was raised in a request for declaratory relief—because Garcia's claim seeks reimbursement for the fines he and the other petitioners had paid. *Id.*

3

at 743 (citing *City of Dallas v. Albert*, 354 S.W.3d 368, 378 (Tex. 2011) ("[A] party cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for declaratory judgment.")). Accordingly, the court of appeals reversed the trial court's judgment, rendered judgment dismissing Garcia's claims, and denied Garcia's request to replead. *Id.* at 745. We granted Garcia's petition for review.

On appeal to this Court, Garcia and the city maintain their respective positions. But the State of Texas, appearing as amicus curiae, urges a third approach. The state argues that Garcia lacks standing to bring claims for prospective relief—his declaratory and injunctive claims— because he has fully resolved his citation by paying the civil penalty and faces no future injury from the law he challenges. And while Garcia does have standing to pursue his reimbursement claims, the state continues, those claims cannot overcome governmental immunity because he cannot allege he paid his fine under duress. Specifically, the state argues that Garcia could have invoked an administrative-hearing process that would have automatically delayed enforcement of his fine. For the reasons explained below, we agree with the state.

## II

### Garcia lacks standing to bring prospective claims

Neither party has questioned Garcia's standing to bring his claims, nor has either court below addressed it. But we are duty-bound to determine whether it exists; standing is a "prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000); *see also Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 507 n.15 (Tex. 1995) ("Because standing is a component of subject matter jurisdiction . . . it may be raised by an appellate court

4

sua sponte."). The importance of this inquiry—even when not urged by the parties—cannot be understated.

Standing consists of some interest peculiar to the person individually and not just as a member of the public. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). A plaintiff has standing to seek prospective relief only if he pleads facts establishing an injury that is "concrete and particularized, actual or imminent, not hypothetical." *Heckman v. Williamson County*, 369 S.W.3d 137, 155 (Tex. 2012) (internal quotations omitted). "An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (citation omitted).

Our issuance of an advisory opinion would violate separation-of-powers principles as well as the open-courts provision of our Texas Constitution. *See id.* at 444–45. Due regard for the separation of powers under our constitutional system of government mandates that "governmental authority vested in one department of government cannot be exercised by another department unless expressly permitted by the constitution." *Id.* at 444; *see also In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012) ("The separation[-]of[-]powers doctrine prohibits one branch of government from exercising a power belonging inherently to another."). And the issuance of advisory opinions is a function of the executive branch, not the judicial. *Tex. Air Control Bd.*, 852 S.W.2d at 444. We have therefore interpreted the Uniform Declaratory Judgment Act "to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions." *Id.* (citations omitted). Our Texas Constitution further provides that "[a]ll courts shall be open, and every person for *an injury*

5

*done him*, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. 1, § 13 (emphasis added). We have held standing is implicit in this provision, which "contemplates access to the courts only for those litigants suffering an injury." *Tex Air. Control Bd.*, 852 S.W.2d at 444.

Garcia seeks prospective relief against the city in three forms: (1) declaratory relief that certain statutes and the city's ordinance are unconstitutional; (2) declaratory relief that city officials acted ultra vires in implementing and enforcing the ordinance, *see City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) ("ultra vires claimants are only entitled to prospective relief"); and (3) injunctive relief prohibiting future enforcement of certain statutes and the city's ordinance. Garcia also seeks retrospective relief through a claim for reimbursement of the civil penalty he paid and, alternatively, a claim for compensation for a constitutional taking of his money. Although the standing doctrine does not foreclose Garcia's retrospective claims, we conclude he has no standing to bring his prospective claims.

After receiving notice from the city of his red-light violation, Garcia paid the requisite civil fine. He has not pleaded that he is subject to any outstanding violation notices that would cause him imminent harm. He has not argued he plans to violate red-light laws in the future. And for standing purposes we "assume that [plaintiffs] will conduct their activities within the law," barring some stated intent otherwise. *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (holding that the threat of a new prosecution was not sufficiently imminent to satisfy jurisdictional requirements of federal courts); *see also Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001) (holding that the chance of people being charged with a crime in the future is too speculative to afford standing to challenge an allegedly unconstitutional law). Having resolved his only notice of violation by paying a civil

6

fine, Garcia has no concrete or particularized stake in the validity or future application of the ordinance, the statutes that enable it, or a declaration that city officials acted ultra vires in the past. "[A]ny prospective relief [a court] might grant cannot help" Garcia because he "no longer face[s] the [purportedly] unconstitutional conduct about which [he] complain[s]." *Williams*, 52 S.W.3d at 184 (dismissing claims for injunctive and declaratory relief for lack of standing); *see also City of Dallas v. Albert*, 354 S.W.3d 368, 378–79 (Tex. 2011) (stating that ultra vires claims work for "only prospective, not retrospective, relief"). And because Garcia alleges only a past injury in the form of having already paid the civil penalty, and not a "continuing violation or the likelihood of a future [injury], injunctive relief will not redress [his] injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998).

Garcia may earnestly believe that red-light cameras are both unconstitutional and bad public policy. But, having paid his fine without arguing he will potentially break the law in the future, he has no particularized interest in the issue distinguishable from a member of the public at large. *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001) ("Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large."); *see also Hunt v. Bass*, 664 S.W.2d 323, 324 ("Standing consists of some interest peculiar to the person individually and not as a member of the general public."). The only individualized injury Garcia can potentially claim is the money he paid to resolve his civil fine imposed under an allegedly unconstitutional ordinance and statutory scheme. But declaratory and injunctive relief on the constitutionality of red-light cameras would not allow him to recoup his money; he would still be required to bring a separate claim for retrospective relief, which he has done and which we address separately. As to his claims for prospective relief, Garcia stands in the same shoes as any other

7

citizen who might potentially be fined for running a red light. With no personal stake in the future application of the ordinance or relevant state statutes, Garcia lacks the particularized interest for standing that prospective relief requires.

In his response to the state's amicus brief, Garcia argues that he has standing to enjoin the enforcement of Chapter 707 because he represents class members who have not paid the civil penalty. In other words, while Garcia lacks personal standing, he is afforded standing as the putative class representative of others who have standing. This is exactly backwards. In *Heckman*, we held that when a plaintiff seeks to represent a class, the plaintiff must personally have standing to pursue "as much or more relief than any of the other plaintiffs." 369 S.W.3d at 152 n.64. We emphasized that "a plaintiff's burden to establish standing does not decrease just because he brings his suit as a class action." *Id.* at 153. Garcia must still show "he has an individual, justiciable interest in the case" because "he cannot borrow standing from the class, nor does he otherwise get a pass on standing." *Id.* at 153–54 (citing *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 710 (Tex. 2001) (internal quotations omitted). As explained, Garcia lacks standing to bring his prospective claims for relief because he does not have an individual and justiciable interest in the case. Whether any other class member has standing is irrelevant.

## III

### Garcia's retrospective claims

#### A. Reimbursement

Garcia seeks reimbursement for the fine he paid, arguing it is an unlawful penalty under the Texas Constitution. *See* TEX. CONST. art. 1, § 17. This constitutes a concrete, individualized injury. Garcia is out the money he paid to satisfy an allegedly unconstitutional fine; he therefore

has standing to bring this claim for retrospective relief. The court of appeals, however, held that governmental immunity nonetheless bars this claim. Although our reasoning differs, we agree with the court of appeals.

Political subdivisions of the state, including cities, share in Texas' inherent sovereign immunity. *Wasson Interests Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016) ("Texas is inviolably sovereign.").[4] Because cities "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them," we have long recognized that cities' immunity extends as far as the state's but no further, nor do cities enjoy immunity outside the performance of their governmental functions. *Id.* at 430. It follows that the legislature may waive governmental immunity, and we will recognize such waivers so long as they are "clear and unambiguous." *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). But it is "the judiciary's responsibility to define the boundaries of [this] common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006).

In keeping with that responsibility, this Court recognizes a narrow exception to immunity when a plaintiff seeks reimbursement of an allegedly unlawful tax, fee, or penalty that was paid involuntarily and under duress. We have distinguished between "non-recoverable voluntary payments to the government" and payments that are "recoverable because they were paid under duress." *Dall. Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876 (Tex. 2005) (cataloging precedents on "duress and voluntary payments to government entities" that "extend into the

---

[4] "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual WITHOUT ITS CONSENT. This is the general sense, and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis in original).

nineteenth century"). We acknowledge that although the "voluntary payment rule may seem counterintuitive, . . . there are important reasons supporting it." *Id.* Namely, (1) "in the taxation context, the rule secures taxing authorities in the orderly conduct of their financial affairs"; (2) "the government's exceedingly strong interest in financial stability"; and (3) "the age-old polic[y] of discouraging litigation with the government." *Id.* at 876–77 (internal quotations and citations omitted).

"On the other hand," we have held, "a person who pays [unlawful] government fees and taxes under duress has a valid claim for their repayment." *Id.* at 877 (acknowledging cases in which reimbursement was allowed "when the public entity compels compliance with a void law and subjects the person to punishment if he refuses or fails to comply" and to remedy certain "illegal fees as well as illegal taxes") (citations omitted).

At the court of appeals, Garcia acknowledged that this exception to immunity "would only apply in the event [the court of appeals] finds the ordinance and statutory scheme that authorized it to be unconstitutional." 523 S.W.3d 729, 745 n.7 (Tex. App.—Beaumont 2017). The court of appeals did not hold the scheme unconstitutional, but observed that this immunity exception would be inapplicable either way, rejecting Garcia's reliance on *Lowenberg v. City of Dallas*, 261 S.W.3d 54 (Tex. 2008) (per curiam). *Id.*

Although the court of appeals did not apply the duress requirement to the reimbursement exception to governmental immunity, we find it pivotal. We explored the common-law and statutory development of the concept of duress at length in *Bolton*. *See* 185 S.W.3d at 877–80. "A common element of duress in all its forms," we observed, "is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's

10

exercise of free will and judgment." *Id.* at 878–79. This compulsion "must be actual and imminent, and not merely feigned or imagined." *Id.* at 879 (citations omitted). And we observed that we "have repeatedly held that duress is established where the unauthorized tax or fee is 'required,' 'necessary,' or 'shall' be paid to avoid the government's ability to charge penalties or halt a person from earning a livelihood or operating a business." *Id.* (citations omitted). "Succinctly, the decision faced 'is to comply or close up.'" *Id.* (quoting *State v. Akin Prods. Co.*, 286 S.W.2d 110, 111 (Tex. 1956)); *see also Ward v. Scarborough*, 236 S.W. 434, 437 (Tex. 1922) ("The restraint must be imminent and such as to destroy free agency without present means of protection.").

We held in *Bolton* that the standard had not been met where college students complained of an unlawful hike in student-service fees, noting that "the students also had the option, if they believed that they could not afford the fee, to seek an exemption from all or part of the fee." *Bolton*, 185 S.W.3d at 880 (citing TEX. EDUC. CODE § 54.503(e) (allowing a community-college district to waive all or part of any compulsory fee for any student facing "undue financial hardship")). We further observed that students had other options "by which they could avoid paying the increased fee or at least lower the fee and still take college classes," including taking fewer hours to eliminate the fee altogether. *Id.* at 881. Accordingly, we held the students did not pay the allegedly unlawful fees under duress.

Similarly, in this case, Garcia chose to voluntarily pay a fine and forgo administrative remedies that would have entitled him to an automatic stay of the enforcement of his fine. Transportation Code chapter 707 specifically states that a person who receives a "notice of violation" under a red-light ordinance "may contest the imposition of the civil penalty . . . by filing a written request for an administrative adjudication hearing." TEX. TRANSP. CODE § 707.014(a).

11

This removes any obligation to pay the fine from the time the notice of violation is received until the hearing officer has had an opportunity to hold a hearing and enter a liability determination. *See generally id.* § 707.014. If the hearing officer imposes a penalty, then the person may appeal to "the municipal court of the municipality" or the "justice court of the county" that issued the citation. *Id.* § 707.016(a). And, while the appeal is pending, there is no obligation to pay the penalty assessed by the hearing officer. *Id.* § 707.016(d) ("An appeal stays enforcement and collection of the civil penalty.").

Because Garcia could have invoked this automatic reprieve from payment and challenged the notice of violation administratively but chose not to, he cannot now claim he paid his fine under duress. *See Bolton*, 185 S.W.3d at 879 (the government's compulsion to pay "must be actual and imminent"); *Ward*, 236 S.W. at 437. There is no compulsion—much less imminent compulsion—if payment may be delayed simply by contesting the underlying citation.

Garcia's ability to delay payment while pursuing administrative remedies—even if that payment might eventually come due—is itself enough to render voluntary his decision to pay without invoking the administrative process, which means the city retains its immunity. Garcia argues the administrative process is not competent to provide relief on his constitutional claims, but that has no bearing on his ability to "stay[] enforcement and collection of the civil penalty," TEX. TRANSP. CODE § 707.016(d), nor does it consider that the administrative process might have granted him relief on non-constitutional grounds, thus mooting those claims. Because Garcia voluntarily paid his fine when options were available to automatically forestall it while he pursued relief, he cannot claim he paid under duress.

## B. Takings Claim

Garcia also claims retrospective relief in the form of a constitutional-takings claim. He argues the fine imposed on him amounts to an unconstitutional taking because the underlying statute authorizing red-light cameras is unconstitutional and because the city failed to conduct the statutorily required engineering study. *See* TEX. CONST. art. I, § 17(a) ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ."). Garcia has standing to pursue this claim because, like his reimbursement claim, it is a claim for retrospective relief—specifically, recovery of the fine he paid. But unlike Garcia's reimbursement claim, governmental immunity does not extend to relief sought for unconstitutional takings. *See State v Holland*, 221 S.W.3d 639, 643–44 (Tex. 2007) (acknowledging immunity does not extend to claims based upon a taking under article 1, section 17 of the Texas Constitution).

After holding that Garcia was generally required to exhaust administrative remedies, the court of appeals rejected Garcia's argument that an exception to the exhaustion doctrine should apply because of the constitutional nature of his claims. *See* 523 S.W.3d at 744–45. After observing that this Court "has never globally exempted claims based on the Texas constitution from statutory exhaustion-of-administrative-remedies requirements," *see Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 552 n.9 (Tex. 2016), the court of appeals cited, among other cases, *City of Dallas v. VSC, LLC*, in which we held that a property owner was barred from bringing a constitutional-takings claim because he failed to pursue administrative remedies that could have resulted in a return of the property or just compensation. 347 S.W.3d 231, 236–37 (Tex. 2011).

Only Garcia's takings claim survives our holdings today on standing and immunity. And so it presents the only occasion for us to decide whether the red-light-camera scheme generally

required Garcia to exhaust his administrative remedies. But we need not go that far to decide that Garcia was at least required to exhaust administrative remedies before bringing his takings claim in district court. We have previously stated that "a litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim." *See City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012). And while Garcia argues he could not litigate his constitutional claims in an administrative proceeding, the fact remains that the hearing officer might have ruled in his favor for other reasons that would moot his constitutional arguments. The question here is not whether an administrative hearing could have resolved *all* of his claims, constitutional or otherwise. Rather, the correct inquiry is whether the hearing officer had the authority to render Garcia's claims moot. And the hearing officer might have agreed, for instance, that the city lacked authority to impose fines without completing the statutorily required traffic study.

In *VSC*, we considered a statutory scheme that provided for redemption of a vehicle seized by law enforcement on the belief that it was stolen. 347 S.W.3d at 234. That procedure provided that a judge "may hold a hearing to determine the right to possession of the property." *Id.* at 235. Failure to exercise the right to that hearing, we held, precluded a takings claim brought originally in district court. *Id.* at 236 ("When there exists provision for compensation—or, as here, for the property's return—a constitutional claim is necessarily premature."). While this case does not involve compensation or the return of property—indeed, Garcia would not yet have paid his fine had he sought a hearing—the principle applies equally here. In *VSC*, we noted the available hearing was "significant, because if a remedial procedure might have obviated the need for a takings suit, then the property simply had not, prior to the procedure's use, been taken *without just*

14

*compensation*." *Id.* at 237 (emphasis in original). Similarly, although Garcia could not have brought a takings claim in the administrative process, that process nonetheless could have resulted in a determination that Garcia did not need to pay his fine at all. Simply put, the administrative proceeding could have obviated the need for Garcia's takings claim in district court because it had the potential to moot that claim. *See Stewart*, 361 S.W.3d at 579; *VSC*, 347 S.W.3d at 237.

* * *

We hold that because Garcia paid his fine and does not argue he will likely continue to incur red-light violations, he lacks standing to bring his claims for prospective relief. As to his reimbursement claim, we hold governmental immunity applies because Garcia is unable to show he paid the fine under duress. Based on these holdings, we need not resolve whether Garcia was generally required to exhaust his administrative remedies. But we hold that he was at least required to seek administrative relief before filing a takings claim in district court. We further agree with the court of appeals' conclusion that "an amended pleading would not cure the defects" in Garcia's claims. 523 S.W.3d at 745. We affirm the court of appeals' judgment.

 

_____

Jeffrey V. Brown
Justice

OPINION DELIVERED: May 3, 2019

15